McKay *vs.* Harrower, late sheriff of Steuben county.

Where property is seized by a sheriff by virtue of an attachment, under the code, he must retain it in his possession until the determination of the action in which the attachment was issued; and, if the plaintiff recovers judgment, until the property is sold, under an execution issued thereon; unless the judgment is otherwise satisfied, or unless, in case of perishable goods, &c. he is ordered by the officer who issued the attachment, to sell the same.

If he has the goods when a proper execution is presented to him, and proceeds to sell thereon, it is all the plaintiff has a right to require of him.

Where the person who was the sheriff when the attachment was issued, and who executed it, ceases to be sheriff, by the expiration of his term of office before the plaintiff obtains his judgment and issues his execution, the execution should be directed, and delivered, to the former sheriff, and not to his successor.

The execution issued, in such a case, should be a special one, directed to the former sheriff as such, reciting the issuing of the attachment, and the taking of the property thereon, and requiring a sale of that property, by him. After which it should direct him to sell the property of the defendant, generally.

Until a proper execution has been put in his hands, directing a sale of the property seized, such former sheriff cannot be placed in default in respect to such property. He is not bound to deliver the property to his successor in office, to be sold on an execution directed, and delivered, to the latter; and cannot be made liable, for a refusal so to deliver it.

APPEAL from a judgment of nonsuit entered at the Steuben circuit in June, 1857. The complaint stated that on the 26th day of May, 1855, the plaintiff commenced an action by summons against one James M. Minier, to recover money due on contract. That on the same day he caused an attachment to be issued against the property of Minier, which was, on the same day, delivered to the defendant who was then sheriff of the county of Steuben. That on the same 26th day of May, 1855, the defendant by L. A. Jones 2d, one of his deputies, did by virtue of said attachment attach and take into his custody, of the property of said Minier, certain articles of personal property, enumerating them, and alleged in the complaint to be of the value of $500. That the plaintiff obtained judgment in his action against Minier, on the 27th day of May, 1856, for $213.33 damages, and $104.02

costs. That an execution on said judgment, against the property of Minier, was on the 26th May, 1856, duly issued to the sheriff of the county of Steuben. That said execution was offered to said L. A. Jones 2d, the deputy of said defendant, with a request that he should satisfy the same out of said attached property, which the said deputy refused to do. That said execution was delivered to Lewis D. Fay, on the 28th day of May, 1856, who was then sheriff of the county of Steuben; that he received the same, and by virtue of said execution did, by direction of the plaintiff, demand of the defendant and also of the said L. A. Jones 2d, the property attached as aforesaid, for the purpose of satisfying out of the same, the judgment aforesaid, and the defendant and the said Jones refused to deliver the said property, or any part thereof, to the said sheriff Fay. That the said defendant neglected and refused to keep the property attached as aforesaid to satisfy said judgment, but suffered the same to be lost or destroyed, so that no part of said judgment could be made out of the same; that Minier was at the time of the rendition of the said judgment and the issuing of said execution, wholly insolvent, and had no property out of which said judgment or any part thereof could be satisfied; and said sheriff Fay, on the 25th of July, 1856, returned the execution wholly unsatisfied. The complaint also alleged that at the time the attachment was issued, Minier was the owner of, or had an interest in, certain real estate in Steuben county, subject to be attached, of the value of five hundred dollars, which the defendant and Jones, his deputy, neglected and refused to attach, by reason of which the plaintiff has lost the collection of his judgment against Minier, &c.

The defendant put in his answer to the complaint, the contents of which it is not necessary to state, as no question arose upon it, at the trial.

The cause was tried at the Steuben circuit in June, 1857, before Justice JOHNSON and a jury, when the plaintiff gave the following evidence, to wit: a judgment roll, by which it

appeared that the plaintiff in this action recovered a judgment against the said Minier for $317.34 damages and costs, on the 27th day of May, 1856. Also a warrant of attachment in due form, issued by a justice of the supreme court against the property of said Minier, as an absconding debtor, dated May 25, 1855, in the action wherein this plaintiff was the plaintiff, and the said Minier was the defendant, reciting that the application therefor was accompanied by the affidavit of the plaintiff verifying the facts and circumstances to entitle the plaintiff to said attachment according to the provisions of chapter 4, title 7 of the code of procedure, and showing that the sum of $200.02 was due from Minier to the plaintiff. The attachment was directed to the sheriff of the county of Steuben, and was in the usual form. Upon the back of said attachment was the following indorsement, to wit: "I have seized the personal property and real estate of James M. Minier, the absconding debtor within named, and have had the same appraised as by the annexed schedule and inventory appear. G. T. Harrower, by L. A. Jones deputy." The signature of said Jones to said indorsement was admitted to be genuine, and that said Jones was a deputy of the defendant. There was a schedule annexed to the return to the attachment, containing an inventory of the property attached, which was all personal property, and which was appraised by the appraisers therein named, under oath, at $466.50. Also an execution issued upon the judgment against Minier, in favor of the plaintiff, dated May 28th, 1856, directed, "To the sheriff of the county of Steuben," reciting the recovery of the judgment. The mandatory part of the execution was as follows: "You are therefore required to satisfy the said judgment out of the personal property of the defendant, James M. Minier, or, if sufficient cannot be found, then out of the real property in your county belonging to the said defendant, James M. Minier, on the 27th day of May, 1856, or at any time thereafter, and to return this execution with your proceedings thereon, to the clerk of the said county where said

judgment was filed as aforesaid, within sixty days after the receipt thereof by you." The execution was indorsed generally, with a direction to levy the amount of the judgment, with interest, fees and poundage. The following indorsements appeared on the execution: "Received May 28th, 1856, at 9 o'clock A. M. L. D. Fay, sheriff, by E. H. Ames, deputy. Filed July 26th, 1856."

"No property found to satisfy the within execution, or any part thereof. L. D. Fay sheriff, by E. H. Ames, deputy. July 26th, 1856."

The plaintiff also gave evidence showing that the deputy sheriff, Jones, was informed on behalf of the plaintiff on the same day or the day after the judgment was entered, that the judgment was perfected, and that the plaintiff wanted him to take an execution and satisfy the judgment out of the property attached. That Jones said it was of no use for him to take an execution, as the property was all gone; that none of the attached property was left, and he could not therefore make any thing on an execution, and it was useless for him to take it. Soon after, and on the same or the next day, Jones was again asked to take the execution and satisfy it out of the property attached, and he made the same reply as before, refusing to take the execution. The execution was then delivered to Ames, the deputy sheriff of Fay, who was the sheriff of Steuben county when the execution was issued. Ames was told to call on the then late sheriff for the attached property. Fay became sheriff on the 1st of January, 1856. That after Ames received the execution he called on the present defendant, and his deputy, Jones, and Minier for property to satisfy it, and did not get any. Ames told Jones and this defendant he was directed to call on them for the property attached. Jones replied that he had none of the property attached; that it was all gone. The defendant Harrower said he had none of the property, and knew nothing about it. That Minier was in possession of a piece of land of 110 acres, about 40 acres under cultivation, and had

been in possession of the premises four or five years before the attachment was issued, and had built a house and barn on them. The plaintiff's counsel then offered to prove that the plaintiff requested the deputy Jones to attach the interest of Minier in the real estate occupied by him, and that he refused, saying he had already attached and taken personal property more than sufficient to pay the plaintiff's demand. This was objected to by the defendant's counsel, on the ground that it was immaterial, and the objection was sustained, to which the plaintiff's counsel excepted.

The plaintiff's counsel then offered to prove that the property attached by Jones was gone, and was beyond his reach, and that the same had been taken away with his knowledge and consent; to which the defendant's counsel objected, which objection was sustained, and the plaintiff's counsel excepted. The objection to the last evidence was on the ground that it was immaterial, and showed no right of action against the defendant.

The plaintiff then rested his cause. The counsel for the defendant moved for a nonsuit upon the grounds, among others, that the complaint did not state facts sufficient to constitute a cause of action, it not appearing therein that a proper execution had been issued to the proper person, or that any default had been made by the defendant to the injury of the plaintiff; also that no cause of action had been made out by the evidence. That no action could be sustained by the plaintiff without showing a special execution directed to the late sheriff commanding him to satisfy the judgment out of the property attached. The court sustained the motion and nonsuited the plaintiff. To which decision the plaintiff's counsel excepted.

*J. W. Dininy,* for the plaintiff.

*William Irvine,* for the defendant.

*By the Court,* WELLES, J.   The attachment against Minier was issued in pursuance of the code of procedure, and the property taken by the sheriff thereon was required to be held by him as security for the satisfaction of such judgment as the plaintiff might recover in the action which he had commenced against Minier.   (*Code,* §§ 227, 231.)   The mode of executing such attachment is prescribed by § 232; which directs the sheriff, to whom the attachment is directed and delivered, among other things to keep the property seized by him to answer any judgment which may be obtained in such action, &c. Section 237 provides that in case judgment be entered for the plaintiff in the action, the sheriff shall satisfy the same out of the property attached by him, if sufficient for that purpose; 1. By paying over to such plaintiff the proceeds of all sales of perishable property &c., or so much as shall be necessary to satisfy such judgment; 2. If any balance remain due and an execution shall have been issued on such judgment, he shall proceed to sell under such execution so much of the attached property, except &c., as may be necessary to satisfy the balance, if enough for that purpose remain in his hands, &c.

It is quite clear that with respect to property seized by the sheriff by virtue of an attachment under the code, he must retain it in his possession until the determination of the action in which the attachment was issued; and if the plaintiff recover judgment, until the property is sold under an execution issued thereon; unless the judgment be otherwise satisfied, or unless, in case of perishable goods &c., he is ordered by the officer who issued the attachment to sell the same, in pursuance of those provisions of the revised statutes, which by sections 232 and 233 of the code, are made applicable.   If he has the goods when a proper execution is presented to him, and proceeds to sell thereon, it is all the plaintiff has a right to require of him.   The 3d subdivision of § 237 gives the sheriff ample powers and remedies where the property attached shall have passed out of his hands before execution on the judgment without being sold or converted into money.   Where

McKay *v.* Harrower.

the same person who was the sheriff when the attachment was issued, and who executed it, continues to be the sheriff of the same county when the execution upon the judgment is issued, the proceedings are sufficiently plain and simple. But in this case, the defendant had ceased to be sheriff, by the expiration of his term of office, before the plaintiff obtained his judgment against Minier, and consequently before any execution in an ordinary case could be properly delivered to him to be executed. And the question arises—to whom should the execution have been directed and delivered; whether to the defendant or his successor in office; and also, what kind of an execution was proper. The code has made no express provision for such a case. But it has declared that "until otherwise provided by the legislature, the existing provisions of law, not in conflict with this chapter, relating to executions and their incidents, the property liable to sale on execution, the sale and redemption thereof, the powers and rights of officers, their duties thereon, and the proceedings to enforce those duties, and the liability of their sureties, shall apply to the executions prescribed by this chapter." (§ 291.)

An attachment issued in pursuance of chapter 4 of title 7 of the 2d part of the code is more in the nature of the former writ of *fieri facias*, as to its object and effect, than of any other common law writ. It is in effect an initiatory execution against the defendant's property before judgment, and issued in anticipation thereof. But the sheriff cannot do any thing by virtue of it in regard to the defendant's property, except to take the property into his possession and keep it until an execution comes. He cannot sell property by virtue of the attachment. He can only sell under an order of the judge who issued it. When the execution comes he does not levy, for that has already been done by authority of the attachment. So that the attachment and execution, together, contain the same and no more authority or force than a common writ of *fieri facias*.

It is contended by the plaintiff's counsel that the new sheriff could sell, by virtue of the execution delivered to him, the

attached property in the hands of the defendant, and that it was the duty of the latter to deliver up the property to the former for that purpose. But to this, it seems to me, there are insuperable objections. In the first place, the execution was a general one, issued according to the provisions of the code, and authorized the new sheriff to make the money out of the defendant's property generally. It should have required, even in case there had been no change in the incumbent of the office of sheriff, that the money be made, in the first place, of the attached property, and to have provided for the collecting of only the balance due upon the judgment, agreeably to the 2d subdivision of § 237, in case any thing should be, or should have been, paid as provided by subdivision one of the same section. In the next place, if it was properly directed to the new sheriff, it should have recited the attachment and proceedings under it, and required the money to be made out of the attached property, if that property could be found. It could not, I apprehend, go against the defendant's property generally until the attached property, or its proceeds, had in some way been all applied on the judgment, or accounted for. But it seems to me the execution should have been a special one directed to the defendant as late or former sheriff, reciting the attachment, the taking of the property thereon, and requiring a sale of that property. If the property attached, or any part of it, had passed out of the defendant's hands after he had seized it under the attachment, he would probably be accountable for its value upon similar principles to those on which a sheriff would be accountable for property taken upon an ordinary execution. The plaintiff, as before remarked, would have no right to go against the property of Minier generally until the attached property had all been applied. By the common law, if the sheriff returned to a *fieri facias,* that he had taken goods, which remained in his hands for want of buyers, the plaintiff might sue out a writ of *venditioni exponas,* reciting the former writ and return, and commanding the sheriff to expose the goods for sale and have the

money in court at the return of it. (2 *Tidd's Pr.* 934.) And it seems that a *venditioni exponas* might be directed to the new sheriff where the old one had returned that he had taken goods which remained in his hands for want of buyers. (*Id. Mildmay* v. *Smith*, 2 *Saund. R.* 343, *and notes.*) But the more usual way of proceeding in such case was by writ of *distringas* to the new sheriff, commanding him to distrain the old one till he should sell the goods, &c. (*Id.*)

There cannot be found among the common law writs, one which is perfectly adapted to the present case; for, while the writ of *venditioni exponas* might go to the new sheriff in a case where the sheriff who made the levy was out of office, yet it was always in a case where the old sheriff had all needful authority to sell, &c.; and where a *distringas* was awarded to the new sheriff it was in a case where the old one was supposed to be in default, and its office was to set him in motion, &c. (*Tidd's App.* ch. 41, § 67, *p.* 274, *Caines' N. Y. ed. of* 1808.)

In the case before us the old sheriff, (the defendant,) has never had in his hands, or in any way been vested with any authority to sell, the goods in question. Although there is no express provision in our statutes for this particular case, I think it is fairly to be implied from § 237 of the code, in connection with the revised statutes, that the execution, in a case like the present, should be directed and delivered to the individual who was sheriff when the attachment was issued, and who attached the property, and that it should be directed to him as late sheriff, &c. By the section last referred to it is provided that in case judgment be entered for the plaintiff the sheriff shall satisfy the same *out of the property attached by him,* &c. The section then proceeds, in four subdivisions, to direct the manner in which the satisfaction is to be made. By the first, he is required to pay over moneys in his hands the proceeds of sales of perishable property, &c. and of collections of debts, &c. By the second he is directed, in case a balance remains due and an execution shall have been issued, to sell, under the execution, so much of the attached property, &c. as

may be necessary &c., *if enough for that purpose shall remain in his hands,* &c.

These provisions, it seems to me, contemplate a sale of the attached property, by the sheriff who took it under the attachment, and by no one else.

The revised statutes provide particularly for the case of an outgoing and incoming sheriff. (2 *R. S.* 438, 9, §§ 67 *to* 74 *inclusive.*) The old sheriff shall deliver among other things to his successor, "all executions, attachments and final process, then in his hands, *except such as the said former sheriff shall have executed, or shall have begun to execute, by the collection of money thereon, or by a levy on property in pursuance thereof."* (§ 69, *subd.* 5.)

There is no statute or other law, that I am aware of, authorizing or requiring an outgoing sheriff to deliver to his successor property taken by the former by virtue of any process whatever. And the law seems to contemplate that whatever official acts remain to be done or executed in relation to such property must be done and completed by the same person who took it—whose official powers for such purposes were intended to be preserved by § 71, on page 439 of the revised statutes, above referred to.

If the foregoing views are correct, the plaintiff entirely failed in making out a cause of action against the defendant. The execution offered to L. A. Jones, who had been a deputy of the defendant while his term of office of sheriff continued, was directed generally "to the sheriff of the county of Steuben," and was in the common form of an execution against the property of the defendant generally, as upon an ordinary judgment in an action for money. In my opinion neither the defendant nor Jones his deputy was bound to receive it, or had any right to execute it. The defendant could not be placed in default in relation to the property seized by virtue of the attachment, until a proper execution was put in his hands for that purpose. He could not sell it until the proper execution was delivered to him. He was not bound to deliver the prop-

erty to the new sheriff to be sold on the execution delivered to him, and would not have been bound to deliver it to the new sheriff on any execution or process which could have been issued on the judgment against Minier.

The offer of the plaintiff, at the trial, to prove that the deputy of the defendant was requested to attach the interest of Minier in the real estate occupied by him, was properly overruled. The attachment recited a debt due from Minier of $200.02, and the return shows a levy on personal property to the value of $466.50. That would seem to have been a reasonable amount, and to have gone beyond it would have been *prima facie* oppressive. Besides, the adequacy of the extent of the levy is to be ascertained by the result of the sale. (*Ransom* v. *Halcott,* 18 *Barb.* 56, *and authorities there cited.*)

The plaintiff offered to prove upon the trial that the property attached by Jones, the defendant's deputy, was gone and was beyond his reach, and that the same had been taken away with his knowledge and consent; and that by the neglect of said Jones, the property was lost to the plaintiff and could not be applied in satisfaction of his claim. This evidence, on objection by the defendant's counsel, was rejected by the court, and the plaintiff's counsel excepted.

The plaintiff was not in a condition to demand the production of the attached property. No execution had been directed and delivered to the defendant, nor any issued upon which the attached property could be sold. The plaintiff was *ahead of his time* in demanding the attached property before he had issued the proper execution upon which it could be sold in satisfaction of the judgment; and had no more right to meddle with it than a stranger. The justice therefore properly overruled the offer.

For the foregoing reasons we are of the opinion that the plaintiff was properly nonsuited, and that the rulings at the trial were all correct. New trial denied.

[CAYUGA GENERAL TERM, June 7, 1858. *Welles, Smith* and *Johnson,* Justices.]