## THAYER a. WILLET.

*New York Superior Court; · General Term, November,* 1859.

ATTACHMENT.—SHERIFF.—FRAUDULENT CONVEYANCE.

A sheriff who, acting under a warrant of attachment issued as a provisional remedy under the Code before judgment, has seized property in the possession of a vendee claiming title under a bill of sale from the defendant in the attachment, may show in defence of an action against him by such vendee to recover the property, that the alleged sale was fraudulent as against the attaching creditors.

Exception directed to be heard in the first instance at general term.

This was an action for chattels. The property in question was merchandise taken from the plaintiff's possession by the defendant, as sheriff, on the 26th day of June, 1857, by virtue of a warrant of attachment issued against one Mason A. Perkins, in a suit brought by Joseph Rosenthal and another, against Perkins, in the Supreme Court.

The plaintiff claimed title to the merchandise under a bill of sale from Perkins, made on the 12th of June, 1857. He proved that the consideration of the sale was an indebtedness of Perkins to himself, which had existed several months, and for which he held Perkins' notes, and that he delivered up these notes on receiving the bill of sale, and took the goods on account of the indebtedness. Evidence was also given tending to show that the plaintiff took immediate possession of the goods, and kept them until they were attached by the defendant.

The defendant having admitted the taking and detention of the goods, offered in evidence the attachment by virtue of which he had taken them, and further offered to prove that the bill of sale or transfer under which the plaintiff claimed was fraudulent and void as against Perkins' creditors, and especially as against the plaintiffs in the action in which the attachment was

issued, and that the plaintiff in this action had notice of the fraudulent intent with which it was made.

The plaintiff objected that as the plaintiffs in the attachment were not judgment-creditors of Perkins, which was admitted by the defendant, they were not in a condition to question the plaintiff's title; and on this objection the court excluded the evidence offered to impeach the transfer. The jury found for the plaintiff in the sum of $1000. The court directed the defendant's exception to the exclusion of the evidence to be heard in the first instance at general term.

*E. & E. T. Brown,* for the plaintiff.—I. The evidence must have properly been excluded on the ground that no evidence was offered that the attaching creditors were creditors at the time of the bill of sale to plaintiff.

II. The plaintiffs in the attachment suit may never recover judgment; and if they fail to do so, the sheriff if he is allowed to defend this action on the ground of the attachment, might keep the property without accountability to any one.

III. After plaintiff had shown a good title as against Perkins, defendant could not attach it without showing a judgment against Perkins. (Jackson *a.* Caldwell, 1 *Cow.,* 622; Parker *a.* Walrod, 16 *Wend.,* 514; Haight *a.* Wilson, 2 *Johns.,* 46; Frisbey *a.* Thayer, 25 *Wend.,* 396; 2 *Cow. Tr.,* 287; Creppen *a.* Hudson, 13 *N. Y.* (3 *Kern.*), 161; McElwain *a.* Willis, 9 *Wend.,* 548; *Cow. & H., notes,* 1079–1082, 739; Hopkins *a.* Webb, 9 *Humph.,* 519; Hastings *a.* Belknap, 1 *Den.,* 190.) If the sheriff can try the question of fraud while there is no judgment, a bill might have been filed by the attaching creditors for the same purpose, but no other decree could be made on such a bill than an alternative decree, directing the application of the property to their debt in case they should recover judgment. This shows the necessity of the rule adopted by the court in this case. (See 23 *Wend.,* 480; Brinkerhoof *a.* Brown, 4 *Johns. Ch. R.,* 671; Clarkson *a.* De Peyster, 3 *Paige,* 320; Cuyler *a.* Morland, 6 *Ib.,* 271; Beck *a.* Burdett, 1 *Ib.,* 305.) Even a judgment of another State, or in the United States Court will not authorize the filing of a bill. (Tarball *a.* Griggs, 3 *Paige,* 207; and see Thomas *a.* Merchants' Bank, 9 *Ib.,* 215; Cary *a.* Cornelius, 1 *Barb. Ch. R.,* 571.)

*William Curtis Noyes* and *A. J. Vanderpoel*, for the defendant.—I. The attachment is a " security for such judgment as the plaintiff may recover," and he cannot avail himself of it by sale of the property until after judgment and execution. His lien enables him to keep the property within the jurisdiction. (Storm *a.* Waddell, 2 *Sandf. Ch. R.*, 494 ; Peck *a.* Jenness, 7 *How. Pr. R.*, 612.)

II. The effect of sections 231 and 232 is to give the creditor the same right to seize on attachment as he would have under execution. The fact of being a creditor must be established in either case. (See McKay *a.* Harrower, 27 *Barb.*, 463, 469 ; Coffin *a.* Ray, 1 *Metc.*, 212 ; Van Loan *a.* Kline, 10 *Johns.*, 129, 131 ; American Exchange Bank *a.* Morris Canal Banking Company, 6 *Hill*, 362, 366 ; Grosvenor *a.* Gold, 9 *Mass.*, 209, 210 ; Martin *a.* Dryden, 1 *Gilm.*, 188 ; *Drake on Attachm.*, §§ 221, 226, 233.)

III. The command of the attachment is the same in substance as that of an execution, and except where the statute directs otherwise, the authority to take is the same. (Pratt *a.* Wheeler, 6 *Gray*, 520 ; Handy *a.* Johnson, 12 *Johns.*, 220.)

IV. The decisions supporting the right to impeach a fraudulent transfer, under attachments against absent and absconding debtors are applicable equally to attachments under the Code.

V. The decisions of sister States, where attachment is resorted to, to sustain the officer's right to seize property in possession of the fraudulent vendee. (Damson *a.* Bryant, 2 *Pick.*, 411 ; Pratt *a.* Wheeler, 6 *Gray*, 520 ; Owen *a.* Dickson, 17 *Conn.*, 492 ; Angier *a.* Ash, 6 *Foster*, 99 ; Halsey *a.* Whitney, 4 *Mason*, 206, 211 ; Warner *a.* Norton, 20 *How.* (*U. S.*), 448 ; Tappan *a.* Evans, 11 *N. H.*, 311.)

VI. The statute relative to fraudulent conveyances is not confined to judgment-creditors : the transfers are void as to all creditors who elect to treat them as void by adopting the process which the law provides ; and attachment as a provisional remedy is one of these. (See Jackson *a.* Myers, 18 *Johns.*, 425 ; Owen *a.* Dickson, 17 *Conn.*, 492 ; Halsey *a.* Whitney, 4 *Mason*, 206, 211 ; Clapp *a.* Leatherbee, 18 *Pick.*, 131 ; 2 *Rev. Stats.*, 136.)

VII. Though Chancery will not ordinarily apply property not leviable by execution, until after judgment and execution re-

turned unsatisfied, yet here we are acting under a power conferred upon a creditor by statute who is pursuing his rights in a court of law. Where the law gives a lien, the party can go into Chancery whenever necessary, to obtain the benefit of it. (See Wilson *a.* Forsyth, 24 *Barb.*, 119 ; Falconer *a.* Freeman, 4 *Sandf. Ch. R.*, 565 ; Scott *a.* McMillen, 1 *Litt.*, 302 ; McElwain *a.* Willis, 9 *Wend.*, 548 ; Tappan *a.* Evans, 11 *N. H.*, 311 ; Kittridge *a.* Warren, 14 *Ib.*, 509 ; Hunt *a.* Field, 1 *Stock.*, 36 ; Stone *a.* Anderson, 6 *Fost.*, 506 ; *Drake on Attachment*, 225, 2d ed.)

By the Court.*—Pierrepont, J.—The case presents the single question whether a sheriff, acting under a warrant of attachment regularly issued in an action pursuant to the provisions of the Code, and who has attached property in the possession of a vendee claiming title under a bill of sale from the debtor, can show in defence of a suit against him by such vendee to recover the property, that the alleged sale was fraudulent as against creditors.

By section 227 of the Code, an attachment may be issued—

*First*, Against a foreign corporation ;

*Second*, Against a non-resident ;

*Third*, Against an absconding or concealed debtor ;

*Fourth*, Against a defendant who is about to remove his property from the State ;

*Fifth*, When he has assigned, or disposed of, or secreted ; or

*Sixth*, When about to assign, or dispose of, or secrete his property with intent to defraud his creditors.

The warrant may issue, when by affidavit it shall appear that a *cause of action* exists against the defendant, and the grounds and amount of the claim is specified. (*Code*, § 229.)

Before issuing the warrant, an undertaking with sufficient surety is required. (§ 23.) And the warrant shall be directed to the sheriff, and shall require him to attach and safely keep such property of the defendant as may be sufficient to satisfy the plaintiff's demand, including costs and expenses. (§ 231.) And the sheriff is required " *to keep the property seized by him,*

---

* Present, Pierrepont, Hoffman, and Moncrief, JJ.

*to answer any judgment which may be obtained in such action.*"
(§ 232.)

If the writ under which the sheriff took the property had been an execution instead of a warrant of attachment, he could have given evidence that the sale to the vendee, Thayer, was fraudulent and void as against the creditors of Perkins. This proposition is too familiar to require any reference to authorities.

An execution is directed against the property of the defendant. The same is true of the warrant of attachment. But it is urged that an execution is founded upon a judgment, by which the relation of debtor and creditor is established; while the warrant of attachment rests upon an alleged claim supported only by *ex parte* affidavits, sufficient to obtain the warrant, and to make a *prima facie* case, which a trial may disprove.

Now, what did the Legislature intend by these provisions of the Code?

When this statute was passed, the law relating to sales and transfers of property with the intent to defraud creditors had long been in force, and all such sales were void. The sheriff who had seized property under a *fi. fa.* might, in an action against him by the vendee of the defendant, show that the title of such vendee was fraudulent as against creditors.

This being the well-settled and long-established law, the Legislature enacts, that when a defendant " has assigned or disposed of his property with intent to defraud his creditors, an attachment (on proper application) may issue, and the defendant's property be held by the sheriff to answer any judgment which may be obtained in the action." Did the Legislature intend to say that a fraudulent assignment of a man's property should be a ground for an attachment, and yet that the fraudulent assignee could forthwith take such property from the sheriff, or sue him in trespass, and the sheriff have no right to set up the fraud in defence of his lien, and his right to hold the goods?

A. owns a store of goods of great value; just before three o'clock he goes to B. and borrows $20,000, and gives his check payable the next day. On the following morning A. transfers his entire stock of goods to his son by a bill of sale, duly executed for the consideration of one dollar, and love and affec-

tion; the son takes possession, and the father retires, and refuses to pay his check. B. obtains a warrant of attachment on the ground that A. has disposed of his property with intent to defraud his creditors. The sheriff seizes the goods in possession of the son, who thereupon sues the sheriff for the value of the goods, proves the bill of sale and possession. The sheriff offers to show the sale fraudulent; but is met with the objection that the transfer, as between the father and son, is good, and that B. is not a *judgment-creditor*, and hence no evidence of fraud in the sale can be admitted. In my judgment, the intention of this statute is clear; its plain meaning is that *a creditor*, whether by judgment or otherwise, upon giving the requisite bonds, and making the requisite affidavit, shall have the right to cause the sheriff to attach the property of the defendant, and keep it to answer any judgment which may be recovered in the action. A transfer of property with intent to defraud creditors is void; not void as to judgment-creditors alone, but as to all creditors; the statute makes no distinction. A transfer which is void conveys no title. The moment the attachment issues, the plaintiff in the attachment is *prima facie* a creditor, and has, so far as the attachment is concerned, all the rights of a judgment-creditor until his *prima facie* claim is defeated.

If the plaintiff in the attachment does not prove his claim, he fails in the action, and the sheriff holds the property ready to be returned to the vendee from whom it was taken, or he responds in such damages as the law awards. But if the plaintiff in the attachment succeeds, and the title of the vendee is adjudged fraudulent, then the property is applied to the payment of the judgment which the attaching creditor has recovered, and no injustice is done, and the intention of the law is satisfied.

Under the statute relating to absconding and fraudulent debtors, attachments have been repeatedly issued, and our courts seem to have recognized the right of the sheriff to maintain his lien upon property attached in the hands of a fraudulent vendee until a determination of the action.

In the case of Falconer *a.* Freeman (4 *Sandf. Ch. R.*, 567), the court says: " The complainants, although *creditors at large*, have acquired a lien upon Freeman's property by this attachment. It is as valid and effective a lien in favor of all creditors

Thayer *a.* Willet.

as is made in favor of a plaintiff at law, by the issuing of an *execution* which he is prevented by some fraud of his debtor from levying on movable property."

In Noble *a.* Holmes (5 *Hill R.*, 194), Judge Bronson says: " The sale could not be impeached by a creditor at large. It must be a creditor having a judgment and execution, or some other process which authorizes a seizure of the goods. As a general rule, process regular upon its face is sufficient for the protection of the officer, although it may have been issued without authority. But when an officer attempts to overthrow a sale by the debtor on the ground of fraud, he must go back of his process and show authority for issuing it. If he acts under an execution he must show a judgment; and if he seizes under an *attachment*, he must show the attachment regularly issued."

The same principle was recognized in Van Etten *a.* Hurst (6 *Hill R.*, 311), and also very directly by Judge Harris in Van Kirk *a.* Wild (11 *Barb. R.*, 520).

The case of Warner *a.* Norton and others, came up by writ of error from the Circuit Court of the United States for the northern district of Illinois; and the court held, that where a sheriff was sued for taking goods under an attachment, which goods had been previously assigned under circumstances which were alleged to be fraudulent, it was proper for the court to charge the jury, that if they believed from the evidence that the sale was made for the purpose of hindering, delaying, or defrauding creditors, it was invalid as against the defendant; and that whether the sale was or was not fraudulent was a question of fact, to be determined by the jury under all the circumstances of the case. (Head Note of Warner *a.* Norton, 2 *How. U. S. R.*, 448.)

An execution directs the sheriff to take the property of the *defendant.* The warrant of attachment does the same. The command in each writ, in this respect, is identical, and the authority to take is the same—under the present statute, the warrant has even a greater power than an execution. It reaches all things which an execution might take, and debts, equities, things intangible besides.

In Handy *a.* Johnson (12 *Johns. R.*, 220), Chief-justice Spencer says: " There can be no doubt that the constable under the attachment could take any goods and chattels which could be

levied on by execution. The authority in both cases is the same."

Justice Welles, in McKay *a.* Harrower (27 *Barb. R.*, 463, 469), says : " An attachment issued under the Code, is more in the nature of the former writ of *fieri facias*, as to its object and *effect*, than of any other common-law writ. It is in effect an initiatory execution against the defendant's property before judgment, and issued in anticipation thereof."

The case of Pratt *a.* Wheeler (6 *Gray's Mass. R.*, 520), was recently decided by the Supreme Court of Massachusetts. In that case it appeared that a tenant in possession of real estate claimed title under a levy upon the premises as the property of Taft & Gleason, made the 6th day of July, 1855—that the action against Taft & Gleason was commenced by " general attachment," dated April 3, 1855.

Prior to the attachment, and so early as October, 1854, Taft & Gleason had conveyed the property to one Bancroft by deed, which was duly recorded. Bancroft conveyed the premises to Edward Lamb by deed, March 24, 1855, which was also duly recorded *prior to the* attachment.

Upon the trial the tenant offered to prove that the deed from Taft & Gleason to Bancroft was made without consideration, and to preserve the property of Taft & Gleason from attachment, and contended that it was therefore void, as against their creditors. The judge before whom the action was tried, admitted the evidence and submitted the question of fraud to the jury, who found in favor of the tenant; exception was taken, and after hearing above, Chief-justice Shaw in delivering the opinion of the court says :

" The court are of opinion that the attachment on mesne process, though in general terms, was sufficient to bind the estate if afterwards levied on. * * * * * It is stated in the argument that this rule ought not to apply when the estate attached does does not stand in the name of the debtor. No authority is cited for this distinction. Perhaps it is founded on the supposed misdescription in the return as of all the interest of *Taft & Gleason* the defendants ; while they had conveyed it away and had no interest. But it seems to us that this distinction cannot be sustained. The theory of the law is, that such a deed by a debtor to defraud creditors, passes nothing ; for all purposes of

attachment,, the estate is the property of the debtor, it is attached as his, levied upon as his, the title by force of the levy passes directly from the debtor to the execution-creditor; the intermediate deed is void, and therefore the estate is not misdescribed as the estate of the debtor, though said deed be on record." The fact that in this case a judgment was obtained after the attachment, can make no difference in the principles upon which the court based their decision.

In Lyon *a.* Sandford (5 *Conn. R.*, 548), the court held, that " the lien by attachment was as sacred as a lien by mortgage."

In Owen *a.* Dixon (17 *Conn. R.*, 498), the court held, that a creditor at large without process could not impeach a fraudulent conveyance; but that a *creditor* having some process on which the property might be lawfully seized, and by which it is made liable either immediately or *ultimately* to be appropriated in satisfaction of the debt, *could* impeach such fraudulent conveyance, and that whether the process was attachment or execution made no difference. The case of Park *a.* Whitney (21 *Conn. R.*, 206), seems also distinctly in point. The statutes of Massachusetts and Connecticut relating to attachments and fraudulent conveyances are so like our own, that their decisions bear directly upon the question before us.

In the late Court of Chancery, a bill to set aside a fraudulent conveyance would not be in favor of one who claimed to be a creditor, before judgment and execution, and such creditor could obtain no lien by filing his bill or *lis pendens;* and the same is now true of proceedings which are in the nature of the old creditor's bill in equity; and hence it is asked, why a creditor before judgment can obtain that indirectly by attachment, which he could not obtain directly by bill in equity or its substitute?

The answer is that the statute gives him the right in the one case, and not in the other. Under the statute the attaching creditor pursues his *legal remedies*, and acquires such rights and liens as that statute gives him. If his case does not come within the statute he cannot avail himself of its provisions. There are many cases where a bill may properly be filed to set aside fraudulent conveyances, in which no attachment could issue. But in a proper case for an attachment, where the creditor seeks his remedy under the law, and in conformity

therewith obtains a warrant, and the sheriff under such process seizes goods, as of the defendant, he acquires a lien upon those goods; if they are in fact the defendant's—they are his, if the sale was void; it was void if made with intent to defraud creditors, and the sheriff's apparent lien, and special property, with right of possession, will remain until that question of fraud can be tried, or until the plaintiff is defeated in his action. We think one of the very objects of the statute was to reach in a summary way the debtor's property fraudulently transferred, and to hold it safe in the custody of the law until the creditor might have an opportunity to prove his demand out of which the debtor was by the sale endeavoring to defraud him.

I have found no case reported in which it has ever been held that the sheriff's special property or lien, acquired by seizure under a regular attachment, has ever been defeated by a vendee of the defendant in the action where the sale to such vendee was fraudulent as against creditors; and no case in which evidence of such fraud was excluded when offered by the sheriff in his defence.

The case of Andrews *a.* Durant (18 *N. Y. R.*, 500), and the other cases where like remarks have been made in the course of the decisions, are not in conflict with this view.

In none of those cases did the question of the sheriff's lien, or special property by virtue of an attachment, arise; and the court did not pass upon, or in any manner seem to have had their attention called to such a case.

I am aware that in the second district, a general term of the Supreme Court, held by three of the most eminent judges in this State, have held a contrary opinion in a case like this. (Hall *a.* Stryker, *Post*, 342.) Entertaining as we do, for the judgment of a court so constituted, the highest respect, we are, nevertheless, compelled to differ in our construction of the statute.

There must be a new trial, with costs to abide the event.

Hoffman, J.—The case has been treated by the learned counsel on both sides as one of great importance, not only in relation to numerous actions, involving large amounts dependent upon its determination, but as to the principles which it embraces and the consequences which it entails. A decision of the learned Court of the Second District, expressly to the point, has also been

brought before us, and as our conclusion is adverse to that decision, it becomes us to state our course of reasoning with fulness and with care.

The defendant, the sheriff of the county of New York, has seized certain goods, under an attachment issued to him in an action in this court still pending. The plaintiff in the present action claims such goods, under an assignment made prior to the attachment. The question is, can the sheriff, the defendant in the present action, set up fraud in the assignment as a defence?

The objection is urged, with great apparent strength, that none but a judgment and execution creditor is allowed to impeach an assignment or transfer of property as fraudulent; that the demand of a creditor must be first judicially determined; that the whole inquiry, trial, and expense of testing the question of fraud may turn out utterly useless, as the plaintiff in the action may be defeated; and thus that principle, authority, and expediency are repugnant to the allowance of the proposed defence in this suit.

These objections, with some others, are urged in the opinion of Mr. Justice BROWN, in the case of Hall *a.* Stryker, in which the General Term of the Second District expressly decided the question before us, adversely to the claim of the defendant here.

The learned judge presented the question thus: " I shall examine whether a person claiming to be a creditor, with a warrant of attachment under the Code, but with no judgment or execution for his debt, has a standing in court which will enable him to impeach and litigate the *bona fides* of a sale of goods by his alleged debtor to a third person, which has been consummated by transfer and delivery of the possession before the lien of the warrant attached." The case is then examined, and various propositions stated and argued, upon which the conclusion was arrived at denying the right of such a creditor. These are adverted to in the following opinion.

The Code has expressly authorized an attachment to issue, when a person has *assigned*, *disposed of*, or secreted any of his property, with an intent to defraud creditors. The property is to be attached as security for a judgment, which may be recovered by the plaintiff (§ 227). The affidavit, under section 229, makes a case for the attachment, when it appears that a cause of action exists, and the party has assigned, disposed of, or secreted any of his property, with intent to defraud his creditors.

The warrant directs the sheriff to attach and safely keep the property of the defendant within his county (§ 231). By section 232 he is to collect and receive into possession all debts, credits, and effects of the defendant, and may take such legal proceedings as may be necessary for that purpose, either in his own name or in that of the plaintiff.

In thus explicitly sanctioning an attachment when property has been fraudulently assigned, the Code appears to warrant necessarily an inquiry into the fraud, and a contest with the alleged fraudulent assignee, and it seems to warrant this upon the attachment merely.

Again : The case of an attachment differs from that of a simple contract-creditor bringing an action to impeach an assignment (Newstad a. Joel, 2 *Duer R.*, 530, 3 *Kern. R.*, 388), in two important particulars—*First*, by section 229 of the Code, a judge is to issue the warrant " when it shall appear by affidavit that a cause of action exists against the defendant, specifying the amount of the claim, and the ground thereof." Here is something of a judicial declaration that the plaintiff appears entitled to recover money (§ 228); in other words, that he is a creditor. *Next*, it cannot be questioned that the attachment constitutes a lien upon property levied upon in any mode, by actual seizure or otherwise, which is allowed by law.

The language of section 227 is clear and comprehensive. The property which may be *attached* (not actually seized), is so attached as *security* for the judgment which may be recovered.

In Peck a. Jenness (7 *How. U. S. R.*, 612), the disputed question whether an attachment was a lien within the second section of the bankrupt act, was determined. The court say : " An attachment on *mesne process* creates a charge on the property attached in favor of the plaintiff, which is, in the language of the courts and the statutes of New Hampshire, called a security and a lien." Cases are cited to show its similar designation in Massachusetts and Connecticut. See also the elaborate opinion of Vice-chancellor SANDFORD in Storm a. Werdell (2 *Sandf. Ch. R.*, 494).

And in McKay a. Hanower (27 *Barb.*, 463), the writ is thus spoken of : " An attachment under the Code is more in the nature of the former writ of *fieri facias* as to its object and effect, than of any other common-law writ. It is, in effect, an initiatory

execution against the defendant's property before judgment, and is issued in anticipation thereof."

It has been very justly observed, that the statute as to fraudulent conveyances (2 *Rev. Stats.*, 137, § 1) does not prescribe that a creditor must have a judgment to entitle him to impeach an assignment. Its language is that every conveyance, assignment, &c., made with intent to delay or defraud creditors, &c., of their lawful suits, damages, debts, or demands, shall be void as against the persons so hindered, delayed, or defrauded.

The statute of 13 Elizabeth (cap. 5) was similar in its language.

It has become a settled rule of law, that a general creditor cannot avail himself of the statute, until he has obtained a judgment and execution (2 *Johns. Ch. R.*, 144); and the Revised Statutes (2 *Rev. Stats.*, 173, § 41) embodied this rule, inferentially at any rate, in express enactments.

Yet it seems clear there is no statutory provision which prevents a creditor, before judgment, who has obtained a statutory lien, from pursuing this mode of redress.

I proceed to notice some important authorities upon this point.

In Giddings *a.* Coleman (12 *N. H. R.*, 153) such a course was sanctioned. "It was a controversy in effect between a creditor seeking to recover a just debt by process of law, and one claiming to be a creditor and *bona fide* assignee of the debt, which is the subject of dispute. The latter must show that his assignment was *bona fide*, and upon sufficient consideration."

Angier *a.* Ask (6 *Foster R.*, 99) is to the same effect. In Stone *a.* Anderson (*Ib.*, 506), the point was decided, after a full consideration, that an attachment was such a lien upon property as enabled the creditor to file a bill to set aside a fraudulent obstruction. Kittredge *a.* Warren is cited as to the same effect (14 *N. H. R.*, 509).

The case of Pratt *a.* Wheeler (6 *Gray R.*, 520) is open to the criticism that a judgment had been obtained. But the language of the chief-justice is very pertinent: "The theory of the law is, that such a deed by a debtor to defraud creditors passes nothing; for all purposes of attachment, the estate is the property of the debtor—it is attached as his, levied upon as his; the title passes directly from the debtor to the execution-creditor. The intermediate deed is void, and therefore the estate is not misdescribed as the estate of the debtor, although such deed be on record."

The attachment law of New Jersey exists only, I believe, in cases of absconding and absent debtors. The provisions are similar to those upon the same subject under our statute (*Rev. Laws of* 1847, 49).

" The writ shall bind the property and estate of the defendant so as aforesaid attached, from the time of executing the same." There are provisions for trying a claim of property by a jury.

By section 28, the proceeding cannot be discontinued without the consent of all the creditors who have applied to the court, or the auditors. Proceedings are taken before auditors to call in the creditors, and the fund is distributed among them.

The case of Field *a*. Hunt (1 *Stockton R.*, 36), so much relied upon by the defendant's counsel, and the two cases cited by the learned chancellor of New Jersey, are open to the remark that the process was to operate like a bankrupt act, and any creditor coming in could continue it in force. Yet with every qualification which may be suggested, the cases prove that the lien by an attaching creditor is enough to enable him (suing on behalf of himself and all others, &c.) to obtain the aid of the Court of Chancery, to interfere with the acts of an alleged fraudulent assignee, to protect the property, and, by bringing in the debtor and assignee, to settle the question of fraud and indebtedness in one suit.

Dixon *a*. Hall *et al* (5 *Michigan R.*, 404), was as follows: On the 2d day of August, 1856, a general assignment was made by *Lewis*, which was conceded to be fraudulent on its face, as authorizing a sale on credit. The assignee sold goods to the plaintiffs below, upon a credit in notes of 12, 18, 24, and 30 months. The sale was on the 24th day of September, 1856. On the 3d day of October, 1856, the goods were attached by the defendant, as sheriff, as the property of Lewis. The plaintiffs below, the purchasers, had taken possession of the goods, but had not given the notes. An inventory was being made.

The court held that none but a creditor or purchaser for value could claim title to property which had been fraudulently assigned, against the action of an attaching creditor; and the plaintiffs were not such purchasers before payment.

There is nothing in the statute of Michigan which renders the principle of this decision dependent upon any special provision. (*Laws of Mich. of* 1846, 114, *ch.* 140 *of Compiled Laws.*)

In Perry *a.* Morrison's Executors (10 *Grattan R.*, 149), Austin Perry had executed a deed to his son William. The executors of Morrison commenced a suit, by attachment, in equity, to set aside the deed, and for payment of their demand, which was of an equitable nature, and by a creditor at large. The court say : "The defendant below, being a citizen of a foreign State, sufficient ground was shown to authorize the plaintiffs to assail the deed, notwithstanding they had not recovered a judgment for their demand."

That demand was of a clearly equitable nature ; and the provision of the statute of Virginia is, that equitable claims for money or property may be enforced by suit and attachment in Chancery, upon affidavit being made as in actions at law. (*Rev. Stats., Virginia*, 1849, 605.)

The provisions and object of the Virginia statute are similar to those of the Code, an auxiliary remedy to an action for the benefit of the particular creditor.

Eaton *a.* Cooper and Smith (29 *Vermont R.*, 444) was this case. The action was trespass for taking goods. The plea of the general issue was accompanied with a notice that the defendant, Smith, as deputy sheriff, had attached the property belonging to Kimball, by direction of the defendant. Cooper, attorney of creditors of Kimball, and that the property belonged to Kimball. The plaintiff claimed under an execution against Kimball, and a purchase upon the same. The attachment was made on the 18th day of February, 1852. Testimony was given tending to show fraud in the purchase by the plaintiff; that it was a cover for Kimball's use, and to defeat creditors. The judge left this question to the jury, instructing them, that if they found this to be the case, the plaintiff could not recover. This ruling was not disputed in the court above ; but a new trial was granted, on a point connected with the misuse of the process by the defendants themselves, evidence as to which had been excluded.

The attachment system of Vermont is that which prevails in other New England States, the commencement of an action, and sequestering the property for the use of the attaching creditor alone, if he recover judgment. (*Williams' Compilation of* 1851, 254.)

The statute law of Connecticut recognizes two kinds of attachment. The first is the process for commencing an action. "At-

tachments may be granted against the goods and chattels of a defendant, and for want thereof against his lands, or against his person, when not exempt from imprisonment on execution in the suit." (*Comp. of* 1854, 51.) Provisions are made for security, and for the mode of attaching real and personal estate. No estate attached is to be held, unless execution is taken out within sixty days after judgment.

These enactments regulate the law in the cases in which an attachment is the process for commencing a suit, and for the benefit of the particular creditor. There are other distinct provisions, termed "foreign attachments" (*Laws of* 1854, 130). Under these, effects in the hands of a trustee are to be attached to answer the judgment, if recovered.

The following cases, out of many upon the subject in the courts of Connecticut, may be referred to as very pertinent. In *Potter a.* Mather (24 *Conn. R.*, 551), the action was trespass against the sheriff and certain attaching creditors of one Potter. Evidence was given to show that the sale to the plaintiff, by the debtor, Potter, was in fraud of creditors. The judge at the trial left the question of fraud to the jury. The court above supported his charge. " The question was, whether there was a change of possession, and whether the sale was fraudulent and void as against the defendants who were attaching creditors."

Peck *a.* Whiting (21 *Conn.*, *R.*, 206), was trover by assignees of a debtor, under an assignment for the benefit of creditors. The defendant, a deputy sheriff, claimed that the assignment was void against the attaching creditors, and various facts were relied upon at the trial to prove this. The whole case turned upon the point of fraud in the transfer. The question was, whether the goods could be held by the attaching creditors against the plaintiffs, who claimed under a previous assignment.

Beers *a.* Lyon (21 *Conn. R.*, 609), is a case of a similar character. It arose in trover against a deputy sheriff, to recover goods taken by him under an attachment, and he defended on the ground of the fraudulent nature of the assignment to the debtor.

I do not know of any distinction between this part of the law of attachment in Connecticut, and that under our own Code, except that, in the former, attachment commences an action, while under the Code it is a remedy auxiliary to an action. I do not

see any reason why, on this account, the cases cited are not applicable.

The case referred to before Vice-chancellor Sandford, Falconer *a.* Freeman (4 *Sandf. Ch. R.*, 565), is an express authority that a creditor, taking out an attachment under the act relative to absent and concealed debtors, obtained such a lien upon the property as enabled him to file a bill in Chancery to enforce and protect his lien against fraudulent obstructing transfers, by means of an injunction or otherwise. The bill was by the attaching creditors, before trustees were appointed. The case is open to the remark, that it was under the general act, operating as an insolvent or bankrupt act. It does not appear to me, that this makes a valid and sufficient distinction.

The learned counsel of the defendants has referred us to an ancient record of the usages and customs of the Burgh of Yarmouth (*Bloomfield's Hist. of Norfolk*, vol. ii., 337, 341). The custom of attachment is recognized as having prevailed there as early as the reign of Edward I. The course of proceeding is stated with marked precision, and among the provisions is one, in substance (art. 13), that, "whereas divers times goods and chattels attached are supposed to be the goods of others, not of the parties defendant; in such cases the parties claiming to have property in those goods, so as to defeat the attachment made, and the actions and recoveries had by force thereof, are to be sworn in open court, that the property which he or they claim in such attached goods is only upon good cause and consideration without fraud, covin, or deceit." The claimant was to enter his plea in court to that effect; if contested, issues were to be joined upon the plea, and a jury impannelled to try them. If the property was found in the claimants, according to the plea, the goods were to be released from the attachment, and restored.

Another clause provided for security being given by the claimants, *whose property is supposed to be without fraud or covin*, in special cases of injury from the property being withheld, that they will proceed to try the question of property within a certain limited time.

I think, also, that the case of Barber *a.* De Vaux and others, cited by Mr. Locke (*On Attachments*, 41, *note* 5), contains a principle to sustain this defence. On a plea of *nil habent*, by gar-

nishees, a question of fraud in the debtor in obtaining money which came to the garnishees' hands, was tried.

The numerous authorities cited by the defendant's counsel as to attachments under the non-imprisonment act and other statutes, contain some strong expressions of the judges in support of their position. I have examined most of them. That of Van a. Hurst (6 *Hill*, 311), states the proposition distinctly; and that of Van Kirk a. Wild (11 *Barb.*, 520), may be considered as exactly in point.

The necessity of proving a debt independently of the plaintiffs' affidavit, noticed in some of them (25 *Barb.*, 429), is obviated, in the present instance, by the admission that the plaintiffs were simple contract-creditors.

The legal rule established in Frisbey a. Thayer (25 *Wend.*, 396), that a landlord with a distress-warrant does not stand in the situation of a judgment and execution creditor, seems to me to furnish but a slight analogy to the present question, and to be very far from determining it.

My conclusion is, that a new trial must be had; costs to abide the event.