## Hastings, Smith & Hoyt *vs.* Belknap and Gomperts.

Where proceedings in bankruptcy were commenced under the late bankrupt act of the United States, by a creditor against his debtor, but before any decree of bankruptcy they were withdrawn upon the debtor making an assignment of his property for the benefit of all his creditors, some of the creditors not concurring in the arrangement; *held* that the assignment was nevertheless valid.

Where a tenant assigns his goods to provide for the payment of *bona fide* debts, and the goods are thereupon removed from the demised premises, the right to distrain is at an end, although the creditors had notice that rent was about to become due.

Where by an arrangement between a debtor and a portion of his creditors, the former assigned his property to trustees, in trust for his creditors, generally, and the trustees in consideration of the assignment and pursuant to the arrangement, personally bound themselves to the debtor, to procure for him a release and discharge from all the creditors, except certain ones who were specified; *held* that the assignment was not conditional or partial, or liable to the objection of being intended to coerce a release from the creditors.

Belknap *v.* Hastings.

Persons justifying under a distress warrant, are not in a condition to impeach a con-
veyance made by the tenant, on the ground of fraud against creditors.  To ena-
ble a landlord to take such objection, he must, like any other creditor, obtain
judgment and issue execution.

ERROR from the New-York common pleas.   Smith, Hastings
and Hoyt, brought replevin in the court below against Belknap
and Gomperts, for a quantity of carpeting.   The defendants
pleaded *non cep.*, and gave notice of the defence afterwards set
up on the trial.

On the trial in December, 1843, the defendants admitted the
taking of the goods in the loft of the store, No. 49, Stone street,
and undertook to justify such taking as for a distress for rent.
It was admitted that Isaac F. Jones and Lemuel Marcy, and one
Winne, were the occupants and the tenants of the defendants of
the premises known as No. 101, in the Bowery, at the rent
of $1000 per annum, payable quarterly; that one quarter's
rent became payable to the defendants on the 1st day of Feb-
ruary, 1843, for the quarter ending on that day; that on the
following day the defendants made the requisite affidavit, and
issued a distress warrant to collect the sum of $250, for the
quarter's rent, and caused the carpeting in question to be seized
to satisfy such rent; that such carpeting had been upon the
demised premises, and was removed therefrom within one
month prior to the time when the same was so seized, and that
such removal took place about the third day of January preced-
ing such seizure.

The plaintiffs then proved by C. Judson, that he, as attorney
for Messrs. Smith, Hewett & Co., in the month of November,
1842, instituted proceedings under the late bankrupt act of the
United States against Jones & Marcy, who were merchants
and partners in the city of New-York; and that while such
proceedings were pending, it was agreed between Jones and
Marcy, and their principal creditors, that the goods and effects of
Jones and Marcy should be placed in the hands of the plaintiffs,
one of whom (Smith,) was a member of the firm of Smith,
Hewett & Co., as a committee on behalf of the creditors, and ·
that if it should be ascertained that the creditors would agree to

take the goods in satisfaction of their debts and discharge them, then they were to execute an assignment of the goods to the plaintiffs in this suit in trust for the benefit of their creditors; but if the creditors were unwilling to make such agreement, then Jones and Marcy were to consent to a decree in bankruptcy, and the property was to be delivered to the general assignee in bankruptcy; and that the goods in question and other property of Jones and Marcy, were immediately afterwards removed by the directions of the witness from the demised premises to the loft in Stone street, where they were taken on the distress warrant. The witness stated, that the fact that rent was about to become due was not thought of by him, and that the removal was not influenced by that fact. He further stated, that it was soon ascertained that the creditors *would* take the property and discharge Jones and Marcy, and that thereupon the proceedings in bankruptcy were discontinued, and that no decree declaring them bankrupts was ever taken.

The plaintiffs' counsel then gave in evidence an assignment under seal from Jones & Marcy to the plaintiffs, dated January 12, 1843. The instrument recited that compulsory proceedings in bankruptcy had been commenced against the assignors by Smith, Hewett & Co., and that a committee had been appointed to take charge of the goods and effects embraced in the assignment, for the benefit of the creditors of the assignors; and it further set forth, that "in consideration of the full, final, absolute, and unconditional discharge and release of the undersigned by each and every of their creditors, of and from all manner of action and actions," &c., they transferred and assigned to the plaintiffs by name, who were stated to be the committee before mentioned, a considerable amount of property, which was described in the schedules annexed, and which embraced the carpeting in question, "to have and to hold the same to the said" plaintiffs, "their representatives and assigns, for the benefit of our creditors forever: to be taken, retained, and disposed of at their own option, and in such manner as they may deem expedient, and without any further action or proceed-

Hastings v. Belknap.

ing in the bankrupt proceedings aforesaid, or any other action in law or equity." The plaintiffs then rested.

The defendants proved that the plaintiff Smith, just before the goods were removed, was informed of the rent then shortly to become due, and said the defendants could afford to lose it, as the other creditors had lost so much. They also produced a paper, purporting to be a schedule of the debts owing by Jones & Marcy, in which was inserted the sum of $1,500 for rent due and to become due to the defendants for the premises in question, from 1st November, 1842, to the end of the term, being one and an half years. It also contained the names of several creditors whose demands were stated to be nearly balanced by counter claims, or to be of a character not likely to be enforced against them. On the back of this schedule there was an engagement under seal, executed by Hastings and Hoyt, two of the plaintiffs, dated February 1, 1843, by which they, in consideration of the assignment executed by Jones & Marcy, which was stated to be "for the benefit of all their creditors," and "for which a full release and discharge was to be obtained from them to said Jones & Marcy," which release, it was set forth had been executed by most of their present supposed creditors; covenanted and agreed that they should be absolutely freed and discharged, and saved harmless from all their debts, demands, and liabilities named in the schedule, excepting as to the claims of the defendants for the rent mentioned in the schedules, and of certain creditors which were named, being those before referred to whose debts were balanced by counter claims or not likely to be enforced. The defendants also produced a release, dated January 10th, 1843, executed by a large number of the creditors of Jones & Marcy, discharging them from all demands, in consideration of their having executed the assignment before-mentioned. This was executed in some instances by persons professing to act on behalf of particular creditors or firms; and on the back of it there was an engagement under seal, executed by the plaintiffs Hastings and Hoyt, engaging in substance, that the release should be effectual as to all those purporting to be parties to it.

The court charged the jury, (1) that the assignment having been executed without the assent or concurrence of the defendants, and after proceedings in bankruptcy had been commenced against Jones & Marcy, was. null and void; (2) That the assignment by Jones & Marcy was not a sale "in good faith, and for a·valuable consideration," within the meaning of the revised statutes concerning distress for rent; and did not therefore preclude the defendants from distraining for the rent; (3) That the assignment was upon the condition that the creditors of Jones & Marcy should release them, and was therefore intended to coerce them and to extort a release from them, and that it was partial; and that for these reasons it was void.

The plaintiffs' counsel excepted to the charge, and the jury found a verdict for the defendants, upon which the court rendered judgment.    A bill of exceptions was duly tendered and signed.

*C. Judson,* for the plaintiffs in error.

*J. W. C. Leveridge,* for the defendants in error.

*By the Court,* JEWETT, J.    The court below charged the jury, that proceedings in bankruptcy having ·been instituted against Jones & Marcy, the transfer and assignment of the property was null and void on the ground that the defendants did not assent thereto or participate in the arrangement. . I think the court erred.    The point is based upon the idea that proceedings once commenced cannot be discontinued or withdrawn so as to remit the parties to the proceeding to the situation which they held with respect to the property of the debtors prior to the commencement of such proceedings.    I should infer from the evidence, that the withdrawal of the proceedings taken in bankruptcy against Jones & Marcy, preceded the execution of the assignment by them; if so, and the withdrawal or discontinuance was authorised, and which I think is to be taken as proved, it will follow that such proceedings could not necessarily affect the legal right that Jones & Marcy had prior to the commencement

of such proceedings to make a valid transfer of their property, with or without the consent of the defendants. It was held by Judge Story, in the *Matter of Randall and another,* in the circuit court of the United States, (*Law Rep. 5th vol. p.* 115,) that a voluntary petition might be withdrawn or discontinued. The judge said, "the application is made before any decree has been passed in bankruptcy." "If the application had been made after such decree, it might have involved other considerations : for the effect of such a decree would be to devest out of the bankrupt all his property and rights of property from that time, and to vest the same in the assignee in bankruptcy immediately upon his appointment." There cannot be any doubt but that on a petition of a creditor for a decree of bankruptcy against a debtor, the court had authority to allow such petition and proceedings under it before decree passed, to be discontinued and withdrawn ; and being withdrawn, I cannot see that the rights of the parties or the creditors of the debtor thus proceeded against, would be in the least affected by the proceedings.

The court also, secondly, charged the jury that the transfer and assignment of the property in question was not a *sale* in good faith for a valuable consideration, within the meaning of the statute, and that the defendants were not barred by such transfer from distraining for rent: that would depend, I apprehend, upon the fact, whether the transfer was made before the seizure, by the tenant, in payment or satisfaction of *bona fide* debts owing by them. This was eminently a question of fact for the jury, and should have been submitted to them. It has repeatedly been held by this court and also by the court of chancery, that a sale or transfer of goods made by the tenant in payment of *bona fide* debts, though the creditor knew at the time that rent was due, and apprehended the landlord might distrain, was valid and effectual as against the right of the landlord to distrain, if the goods were removed from the demised premises before they were seized under the warrant of distress : that the exception in the 16th section of the act, (2 *R. S.* 503,) does not apply to goods taken by a creditor of the tenant with his assent in payment of *bona fide* debts, and that "the landlord

can set up no peculiar preference over other *bona fide* creditors, until he acquires an actual lien upon the goods" by seizure under his warrant. (*Frisbey* v. *Thayer*, 25 *Wend.* 396; *Coles & How* v. *Marquand & Freeman*, 2 *Hill*, 447; *Slocum* v. *Clark & Saxton*, 2 *Hill*, 475; *Martin* v. *Black*, 9 *Paige*, 641.)

The court also charged the jury, that the assignment was on the condition that the creditors of Jones and Marcy should discharge and release them; that it was coercive on their creditors and made to extort a release from them, and was therefore fraudulent and void; that the defendants were not parties to the proceeding in bankruptcy, had never given their consent thereto, and had not assented to the assignment, and that the assignment was partial. Some time about the first of January, 1843, while proceedings were pending on the petition of Smith, one of the plaintiffs and his co-partners against Jones and Marcy, for a decree against them declaring them bankrupts, &c. a negotiation commenced between the petitioners and others, the principal creditors of Jones & Marcy, to discontinue such proceedings, and receive from Jones & Marcy an assignment of their property in satisfaction of their debts. It was not then known, but it was believed by those creditors, that all of the creditors of Jones & Marcy would consent to such an arrangement and release their debts on the making of such assignment; and in this stage of the negotiation it was agreed that the plaintiffs, as a committee for the creditors, should take possession of the property, and hold it until it could be ascertained whether all the creditors would come into such arrangement, and if they would, an assignment should be made, the bankrupt proceedings discontinued, and the debtors discharged; if otherwise, Jones & Marcy were to consent to a decree in bankruptcy, and the property in that event was to be delivered to the assignee in bankruptcy. Under this arrangement, about the 3d of January, 1843, the plaintiffs took possession of the goods of Jones & Marcy, of which the property in question formed a part, and removed them from the demised premises to their store-house. On the 10th of January, the greater part in number and amount of the creditors

of Jones & Marcy executed a release, reciting as the consideration thereof an assignment by Jones & Marcy to the plaintiffs, " in trust for the benefit of the creditors of said Jones & Marcy all their property." This release was evidently delivered to Jones & Marcy on the 12th day of January, when they, by an instrument in writing executed under their hands and seals, reciting the proceedings in bankruptcy, appointment of committee to take charge of the property thereby transferred on the behalf of, and for the benefit of their creditors, in consideration of the full, final, absolute, and unconditional discharge and release of the said Jones & Marcy from all demands against them, *assigned* to the plaintiffs all their property " for the benefit of their creditors forever." Hastings and Hoyt by an instrument in writing, under their hands and seals, dated the 1st day of February, 1843, covenant with Jones & Marcy, in consideration of said assignment, for which a full release and discharge was to be given, and which had not been fully obtained, that they should be fully and absolutely freed and discharged from all their debts excepting certain claims set forth.

The court below charged that the assignment was fraudulent and void, because it was *conditional*, to wit: that Jones & Marcy's creditors should release ; that it was *coercive* on their creditors, and made to extort a release. In terms it was absolute, and not conditional. The consideration of the assignment was a release already given or executed, and it was a present absolute assignment for the benefit of all their creditors. This is not an assignment made by a debtor, for the benefit of his creditors, upon condition that they, in order to receive the benefit of it, shall discharge him from their demands. An assignment which excludes all creditors who shall not within a given time release all claims, &c. would be void as against the creditors of the assignor. (*Mackie & Cairns,* 5 *Cowen,* 547.) So an assignment which declared that, as a condition of receiving a dividend, the creditors should release the balance of their debts, and also that any creditor not receiving his dividend, and giving a discharge within five days after notice of the dividend, should be precluded from the benefit of

the assignment, and the whole of the property should be divided among those creditors who did come in. Such an assignment was deemed to be an attempt to coerce the creditors into terms which the debtor chose to prescribe, and it was held to avoid the assignment. (*Armstrong* v. *Byrne,* 1 *Edwards, Ch. R.* 79.) I cannot see how the principle established in that class of cases is to be applied to the one before the court. To me, this appears to be the case of debtors hopelessly insolvent yet having some property, being applied to by their creditors to assign it in trust for them, offering to them as an inducement to do so, to discharge their demands upon condition that such assignment shall be made, and an acceptance of such offer on the part of the debtors; and subsequently an honest and fair attempt to carry it into effect.

But suppose it may be assumed that the assignment was fraudulent as against any creditor of the assignors, who did not accept of its provisions, it could only be avoided by such creditor after judgment and execution. The defendants do not stand upon that ground. "A distress warrant does not stand on the footing of a judgment and execution." (*Per Nelson, Ch. J., in Frisbie & Thayre, supra.*) The assignment was valid as between the parties to it, and could not be impeached except by a judgment creditor, even if it was fraudulent as against creditors. I am of opinion the court below erred in their charge, and that the judgment should be reversed.

Judgment reversed and *venire de novo* awarded.