ANDREWS *et al. v.* DURANT *et al.*

The builders and owners of an unfinished barge, on which the sheriff had levied executions, transferred it to the plaintiffs, by an assignment void upon its face as against creditors. The defendants, claiming that the barge had been their own from its commencement, brought replevin against the sheriff and obtained possession. The plaintiffs having discharged the sheriff's levy, demanded the barge of the defendants and brought trover: *Held*, that the replevin suit and the possession obtained through it by the defendants, in no way affected the rights of the plaintiffs.

The defendants cannot, as mere creditors at large, defend their possession by reason of the invalidity of the assignment as against creditors having judgments and executions.

Possession not derived from the original owner, but in hostility to him, does not give a creditor at large the right to resist a fraudulent transfer.

The plaintiffs were entitled to recover the actual value of the barge at the time of conversion, with interest thereon, irrespective of the price at which the builders had contracted to sell it to the defendants, and without any deduction for partial payments made by them to the builders.

APPEAL from the Supreme Court. The action was in the nature of trover to recover the value of a barge. The plaintiffs claimed title under a general assignment for the benefit of creditors, made by Bridger & Bishop, who were ship carpenters, and had built the barge under a contract for that purpose with the defendants. Bridger & Bishop had commenced the construction of the barge under that contract; had received $3,000 of the $5,000 which was to be paid as purchase money, and the barge, in its unfinished state, was levied on by the sheriff of Ulster, by virtue of several executions against Bridger & Bishop, in whose shipyard, at Rondout, it then was. After this levy, and while the barge was subject to it, on the 4th August, 1849, Bridger & Bishop made an assignment, for the benefit of creditors, to the plaintiffs. The assignment contained, among other provisions rendering it fraudulent upon its face, as against creditors, one that the assignees might " use money and materials, not to exceed $1,500, in completing the vessel and work then in progress, which they should deem it advisable and profitable to finish, instead of disposing of and selling the same in their unfinished state."

Immediately after the assignment the defendants demanded the barge of the sheriff, and he refusing to deliver it, they brought a replevin suit and took possession of it. They then claimed that the title to the barge was in them under the contract with Bridger & Bishop. This court held otherwise (*S. C.*, 1 *Kern.*, 35), and directed a new trial in this action. Upon the second trial, before Mr. Justice HARRIS, at the Ulster Circuit in November, 1855, the facts before stated were proved, but it did not appear whether any judgment had been rendered in the replevin suit. It was further proved that upon obtaining possession of the barge, and about a week or ten days after the assignment, the defendants offered the plaintiffs that they, the plaintiffs, might go on and finish the barge, and that the defendants would pay them, when finished, the balance of the contract price for

building. The plaintiffs refused to finish the barge under the contract, but claimed and demanded it as their own property, having, previous to that time, paid the executions levied as aforesaid. The defendants refused to deliver the barge to the plaintiffs. The barge was finished by the plaintiffs under a contract with the defendants, for which the plaintiffs were paid $700 by the defendants. The agreement for thus finishing it was made with the plaintiffs, not as assignees or as owners, but as strangers, and under a stipulation that that fact was to have no other effect upon the rights of the parties than if the agreement had been made and performed by parties having or claiming no interest in the boat.

The defendants moved for a nonsuit upon the ground that, the assignment being void, the plaintiffs had no title to the property in question and no right of action; that the defendants could defend their possession against the void assignment, as creditors of Bridger & Bishop to the extent of the $3,000, paid by them on account of the barge under the contract which they violated; that the plaintiffs never had any possession of the barge, the custody thereof being in the sheriff, at the time of the assignment, and being transferred from him to the defendants by virtue of legal process in the replevin suit, which does not appear to have ever been determined. The judge refused to nonsuit, and the defendants excepted

The judge charged the jury, the defendants excepting to each particular, that the plaintiffs were entitled to recover the value of the vessel, with interest upon it from the time of their demand; that in estimating such value the jury were not to be governed by the contract price between the defendants and Bridger & Bishop, but were to include the value of all the labor and materials put upon her up to the time of the demand by the plaintiffs, and to allow for her entire value when finished, deducting only the $700 paid by the defendants to the plaintiffs for finishing the barge The court further charged that the defendants had no pro

perty in the barge, general or special, nor any right or interest in her whatever, nor any lien upon her nor right to detain her, and that the defendants were not entitled to have the sum of $3,000 paid by them to Bridger & Bishop, on any other sum or amount, or the value of any labor, materials or superintendence contributed by them towards the construction of the barge in any way applied to reduce the claim of the plaintiffs. The jury rendered a verdict for the plaintiffs for $6,869.19. The judgment thereon was affirmed at general term in the third district, and the defendants appealed to this court.

*John H. Reynolds*, for the appellants.

*Amasa J. Parker*, for the respondents.

JOHNSON, Ch. J. The levy of the sheriff of Ulster on the barge in question, by virtue of executions against Bridger & Bishop, while it transferred the possession of the barge and vested a special property in the sheriff, did not diminish or at all affect the right of Bridger & Bishop, the general owners, to sell and dispose of it, subject to the rights acquired by and incident to the levy. Their assignment, therefore, to the plaintiffs, although it may have been fraudulent as to creditors, and although it was subsequent, in point of time, to the levy, was valid and effectual between the parties to the instrument, and as to all other persons not coming within the protection of the statutes for the prevention of frauds. As between the plaintiffs and the sheriff, the plaintiffs had the position of their assignors and were entitled to extinguish the sheriff's rights by the payment of the executions in his hands. Under these circumstances the replevin, brought by the defendants against the deputy-sheriff, did not constitute them successors to the sheriff's possession in any other sense than that they, in fact, took from the sheriff, by the writ, the possession of the property

The taking was under a claim of right hostile to that which the sheriff was asserting. They claimed to be themselves the owners of the property under the contract for the building of the barge by Bridger & Bishop. To the replevin suit the plaintiffs were strangers; they would not be affected by its final determination. No decision in it could have altered their rights. The title which the sheriff had acquired by the levy was, while it lasted, an obstacle in the way of their assertion of right, because it was both prior and superior to their title. But when they paid the judgments which were the foundations of the levy, they did not acquire the sheriff's position nor his title; they simply put an end to it, by the extinguishment of the claim by virtue of which it had its origin.

The plaintiffs being, as we have seen, strangers to the replevin suit, and having extinguished the rights of the sheriff, demanded the property of the defendants, who had claimed it and obtained possession, not under the sheriff but in hostility to him, and on the ground of title in themselves by the contract under which the barge was built That claim of title having been determined in the former decision of this court to be unfounded (S. C., 1 Kern., 35), the question is whether they can successfully resist the plaintiffs' claim on the ground that they are creditors of Bridger & Bishop, and that the assignment was fraudulent as to creditors.

The general rule is well settled, and indeed is not denied, that to enable a creditor to attack an assignment as fraudulent, he must first have placed himself in such a position that the assignment interferes with the assertion of his right to the particular property in question. He must have proceeded to judgment and execution. (Hastings v. Belknap, 1 Denio, 190, and cases cited.) Until he has done this he is a mere stranger, and bound by the act of the debtor as the debtor is himself. Then does the fact that he has obtained possession, being a creditor, give him a right to resist the

fraudulent transfer? Possession is, of course, *prima facie* evidence of title; but that, standing alone, is overcome by the claim of the purchaser, though his title is fraudulent as against creditors. The possession will not be aided by the fact that he is creditor; because as creditor he has acquired no right to the specific thing, and his possession was not derived from or under the original owner, but in hostility to him. When the presumption of title which possession affords has been overthrown by proof of title, good as against the original owner, the latter must be opposed by some title to the thing, which is in law superior; and that does not exist in favor of a creditor at large. As such merely he cannot make title to any part of his debtor's property. The result of the contrary doctrine would be that the assignor could not claim, because he had assigned by an instrument binding upon him; and the assignee could not, because his conveyance was in fraud of creditors; and that the creditor, without lien or title, who had in any way obtained possession of the property, would hold it. Such a mode of administering a debtor's property among creditors would lead neither to peace and good order nor to any equitable result. I am of opinion, therefore, that the plaintiffs, when they demanded the barge, had a right to its possession, and that the defendants, by their refusal to deliver, made themselves liable for its value in this action.

The damages were of course to be estimated by the value of the thing. The price at which, by the contract, it was to be built could not control the determination of the real value.

The defendants were allowed the benefit of the $700 agreed to be paid by them to the plaintiffs for finishing the barge, which agreement it was provided should not affect the rights of the parties to maintain or defend this suit. And as it clearly appears that this sum covered all that was done on the barge after the demand and refusal, there was no error in the charge that the plaintiffs were entitled to the value of the barge when finished, deducting the $700.

Interest on the value at the time of the conversion was properly directed to be allowed. It is as necessary a part of complete indemnity as the value itself. There is no sense in the idea that interest is any more in the discretion of the jury than the value. The cases in *Sedgwick on Damages* (491) show, I think, that it always was the law of this state that interest from the time of the conversion, in addition to the value of the chattel converted, was to be allowed as damages. In *Dana* v. *Fiedler* (2 *Kern.*, 40), we held that interest was to be allowed as a legal right in an action for damages for the non-delivery of personal property, and clearly an action for the conversion of personal property presents all the reasons in favor of allowing interest which exist in the case decided.

The judgment should be affirmed.

ALLEN, J., also delivered an opinion concurring in all points with the preceding. SELDEN, J., was absent; all the other judges concurring,

Judgment affirmed.