GEORGE RINCHEY *v.* BURDETT STRYKER.

An attachment, issued as a provisional remedy under the code, authorizes the sheriff to seize any property which the defendant therein has disposed of, in any manner, with intent to defraud his creditors.

A party procuring an attachment is not to be deemed a mere creditor at large of the defendant therein, after the writ is served, but a creditor having a specific lien upon the goods attached. And the sheriff, as his bailee, has a like lien, and has a right to show, in defense to an action for seizing the attached property, that the title of the plaintiff claiming the goods under an assignment from the defendant in the attachment is fraudulent, as against the attaching creditor.

The judgment recovered in the attachment suit is admissible in evidence in a suit brought against the sheriff, as proof of the existence of the debt of the attaching creditor, although not recovered until after the issue was joined in the latter suit.

THIS action was brought in the Supreme Court to recover the value of certain goods that the plaintiff alleged the defendant forcibly and wrongfully took from his possession and carried away, at the city of Brooklyn, in November, 1857. The defendant set up in his answer, for a justification, that he was the sheriff of Kings county; that one of his deputies

seized the goods by virtue of certain attachments granted by a justice of the Supreme Court, in certain actions commenced in that court, by divers persons, against William Cartwright and Moses R. Hassard; that the attachments were issued upon affidavits showing that Cartwright & Hassard were colluding, assigning and disposing of their property with intent to defraud their creditors, or had assigned or disposed of the same with the like intent; and that the goods when seized were the property of Cartwright & Hassard.

The action was tried at the Kings circuit in April, 1858, when it appeared that the goods taken by the defendant's deputy sheriff were worth $2929.64.

The defendant's counsel, in his opening to the jury, stated that the goods belonged to Cartwright & Hassard; that they came into the possession of the plaintiff from one Parise, under a fraudulent sale or assignment; that Parise derived his alleged title to the goods by an assignment made to him by Cartwright & Hassard, with intent to hinder, delay and defraud their creditors, on the 18th day of November, 1857; that the plaintiff had notice of the fraud committed by Cartwright & Hassard, at the time he obtained the goods; and that the attachments were issued as stated in the answer under which the defendant, by one of his deputies, took the goods.

The defendant's counsel then offered in evidence exemplified copies of the affidavits and undertakings on which each of the attachments was issued; also the original attachments, and exemplified copies of the judgment rolls in the actions, against Cartwright & Hassard, in which the attachments were issued; the judgments in those actions having been recovered after the commencement of this action, which was commenced on the 23d day of December, 1857. He further offered to prove the assignment from Cartwright & Hassard to Parise was made with the intent on the part of the assignees to hinder, delay and defraud their creditors, and was taken by Parise with the like intent; and that the plain-

tiff's title was fraudulent as against the creditors of Cart-
wright & Hassard; and that the debts existed for which the
attachments were issued, as stated in the affidavits on which
they were issued.

The plaintiff's counsel objected to the admission of the
evidence, and to each and every part thereof, on the follow-
ing grounds: 1. That the defendant could not justify under
the attachments, because the attaching creditors were gen-
eral creditors merely and not judgment creditors, and there-
fore not in a position to attack the assignment and sale, or
the title either of the assignee or the plaintiff. 2. That the
judgments offered in evidence having been recovered since
the commencement of this action were not admissible. The
judge sustained the objection, on each of the above grounds,
and excluded the evidence so offered and every part thereof.
To which decision and ruling the defendant's counsel except-
ed. By direction of the judge the jury rendered a verdict
in favor of the plaintiff, for the value of the property and
interest on such value.

The defendant's counsel moved for a new trial, on the
exceptions, at a general term of the Supreme Court in the
2d district, which motion was denied; and judgment was
there rendered against the defendant for the amount of the
verdict, with costs. From which judgment he appealed to
this court.

*Wm. D. Booth,* for the appellant,

Cited and commented upon the following authorities:
Code, § 227; Laws of 1857, ch. 723, § 7; Laws of 1831,
ch. 300; *Thayer* v. *Willet,* (9 Abb. Pr. Rep. 325;) *Patter-
son* v. *Perry,* (10 id. 82;) *Skinner* v. *Oettinger,* (14 id. 109;)
*Kelley* v. *Breusing,* (33 Barb. 123;) *Schlussel* v. *Willett,*
(22 How. Pr. Rep. 15;) *Belmont* v. *Lane,* (Id. 365;) *Thayer*
v. *Willet,* (5 Bosw. 344;) and also numerous other au-
thorities.

*John H. Reynolds,* for the respondent,

Cited and commented upon the following authorities: *Reubens* v. *Joel,* (3 Kern. 488;) *Van Heusen* v. *Radcliff,* (17 N. Y. Rep. 580;) *Andrews* v. *Durant,* (18 id. 496;) *Hastings* v. *Belknap,* (1 Denio, 190;) *Hall* v. *Stryker,* (29 Barb. 105;) *Bentley* v. *Goodwin,* (15 Abb. Pr. Rep. 82.)

BALCOM, J. The main question in this case is, whether the defendant, as sheriff, could rightfully seize the goods in question and take them from the possession of the plaintiff, by virtue of attachments issued by a justice of the Supreme Court, in actions in that court against Cartwright & Hassard, on the ground that they, with the intent to hinder, delay and defraud their creditors, assigned the goods in question to Parise, who took them with the like intent, and transferred the same to the plaintiff with notice of the fraud.

Section 229 of the code authorizes the issuing of an attachment, in an action for the recovery of money, when the defendant has assigned, disposed of, or secreted, or is about to assign, dispose of, or secrete any of his property with intent to defraud his creditors.

The attachments were regularly issued in actions for the recovery of money. But they were wholly useless as processes, unless they authorized the sheriff to seize the goods in question, as the property of the defendants named therein, and gave him such a specific lien on the goods seized as enabled him to show their transfers to Parise and the plaintiff were fraudulent as against the creditors of Cartwright & Hassard.

The numerous authorities cited by the plaintiff's counsel have failed to satisfy me that an attachment is a useless process, when the debtor has fraudulently assigned or disposed of his property before it is executed. They establish that a creditor at large, without any process or lien, can not seize or hold the property of his debtor on the ground that he has transferred it with the intent to defraud his creditors. But

none of them, except *Hall* v. *Stryker*, (29 Barb. 105,) which was followed by the Supreme Court in this case, and induced the decision in *Bentley* v. *Goodwin*, (15 Abb. Pr. Rep. 82,) show that an attaching creditor can not prove, when sued for the property attached, that the plaintiff's claim thereto is invalid, and rests upon a fraudulent transfer of the property by the debtor.

The cases mentioned in *Hall* v. *Stryker*, which hold that an officer can not justify, when sued by a stranger for property he has taken on execution, without proving the judgment on which the execution was issued, as well as· the execution itself, only tend to show that the production of the attachment, by virtue of which the property has .been seized, without the affidavit on which it was granted, is insufficient as a foundation for the defense that the plaintiff's claim to the property rests upon a fraudulent transfer of the same to him by the defendant named in the attachment.

The remarks of the judges who delivered the opinions in *Frisbey* v. *Thayer*, (25 Wend. 396,) and *Hastings* v. *Belknap*, (1 Denio, 190,) and the other kindred cases cited, that a landlord who seizes goods off the demised premises, by virtue of a distress warrant, can not prove, when sued for the goods by one who has purchased them from the tenant, that such purchase was fraudulent as against the creditors of the tenant, were *obiter*, and unnecessary to the determination of the cases in which they were made. Besides, a distress warrant is not granted by a judicial officer, but is issued by the landlord in person ; and the right to seize goods of the tenant on such a warrant, after they are removed from the demised premises, did not exist at common law. But I am constrained to say, if there is not any substantial difference in principle between those cases and the one under consideration, I can not assent to the dicta in them. For the statute referred to in those cases only prohibits the seizure of the goods of the tenant, carried off from the demised premises, "which shall have been sold before such seizure made in good faith and for a valuable

consideration, to a person not privy to such fraudulent removal," (2 R. S. 2d ed. 413, § 17;) and the right to distrain without the right to prove that the distress was lawful, when sued for making it, is no right at all. I have much less hesitation in repudiating the dicta referred to than I should have if distress for rent had not been abolished by the legislature. This course will not tend to unsettle any rule of law now acted upon by the profession or people at large, and it will open the way for establishing a principle upon a just foundation which must be constantly acted upon, so long as attachments are issued against debtors who have disposed of their property with the intent to defraud their creditors.

The remark of Johnson, Ch. J. in *Andrews* v. *Durant*, (18 N. Y. Rep. 496,) to the effect that a creditor can not attack a fraudulent assignment of his debtor, until he has proceeded to judgment and execution, and similar ones by other judges in *Reubens* v. *Joel*, (3 Kern. 488,) should have been qualified, as Denio, J. qualified his remarks in *Van Heusen* v. *Radcliff*, (17 N. Y. Rep. 580.) He said, "When a conveyance is said to be void against creditors, the reference is to such parties, when clothed with their judgments and executions, or such other titles as the law has provided for the collection of debts." Judge Bronson used similar language in *Noble* v. *Holmes*, (5 Hill, 194.) He said, "The sale could not be impeached by a creditor at large. It must be a creditor having a judgment and execution or some other process which authorized a seizure of the goods." He also said, in *Van Etten* v. *Hurst*, (6 Hill, 311,) "before creditors can attack a sale by their debtor for fraud, they must show a judgment as well as execution; or where they proceed by attachment, they must show that the justice had jurisdiction, and that the process was regularly issued."

Vice Chancellor Sandford held, in *Falconer* v. *Freeman*, (4 Sandf. Ch. Rep. 565,) that a creditor, who takes out a warrant of attachment, under the act relative to absent and

concealed debtors, thereby obtains a lien upon the property of the debtor proceeded against; and if the sheriff be prevented from levying the warrant on the debtor's property, by means of fraudulent claims or transfers set up in respect of the same, the Court of Chancery will aid the creditor in enforcing the lien, by injunction and otherwise; on the same principle that the court aids an execution creditor similarly obstructed.

The New York Superior Court held, in *Thayer* v. *Willet, sheriff,* (5 Bosw. 344; S. C. 9 Abbott, 325,) that a sheriff, acting under a warrant of attachment issued as a provisional remedy under the code before judgment, who has seized property in the possession of a vendee claiming title under a bill of sale from the defendant in the attachment, may show in defense of an action against him by such vendee to recover the property, that the alleged sale was fraudulent as against the attaching creditor. And the decision in that case is supported by two well considered opinions. The following cases agree with that: *Skinner* v. *Oettinger,* (14 Abbott, 109;) *Patterson* v. *Perry,* (10 id. 82;) *Belmont* v. *Lane,* (22 How. Pr. Rep. 365;) *Kelly, sheriff,* v. *Breusing,* (33 Barb. 123.) The same rule has been held in several other states; but it is unnecessary to cite the cases. Several of them are referred to by the judges of the New York Superior Court in *Thayer* v. *Willet,* (supra.)

The fact that an attachment is issued, in a case like this, before the debt is conclusively established on which it is founded, and that it may subsequently be shown by the defendant in the attachment that there was no such debt, is not a sufficient reason for holding that the attaching creditor can not show that the property attached is in fact the debtor's, when sued for it by a third person who claims it by a title which is fraudulent as against the attaching creditor. Such third person may prove that no such debt existed, until it is established by a judgment in the attachment suit. He may therefore defeat the attaching creditor on either of two

grounds: 1st. That there was no debt to justify the issuing of the attachment; 2d. That he had a good title to the property in dispute, when it was attached. Of course the creditor or officer must first prove the existence of the debt for which the attachment was issued, when such debt has not been established by a judgment against the debtor. When that is done, the judgment proves it.

It certainly is not an insuperable objection to permitting all of this to be done, simply because it authorizes the trial of two different issues in the same action. Indeed, two different issues must be tried in the action, if formed by the pleadings, though the creditor has previously recovered a judgment against his debtor, and is able by it to establish conclusively the existence of his debt.

When the creditor has no such judgment the party claiming that the property did not belong to the debtor, when it was seized, has two chances of success. But when the creditor has obtained such a judgment he has but one. In other words, the conclusiveness of the judgment, in effect, narrows the litigation down to a single issue.

It has been said that although the creditor may be able to show, when sued for the property attached, that a debt was justly due him, for which the attachment was issued, and yet be defeated in his action for the recovery of the alleged debt. It may also be said that he might be beaten in the first action by failing to prove his alleged debt, and succeed in establishing it in the second.

But this reasoning is no answer to the fact that the code authorizes an attachment whenever the debtor has disposed of any of his property, with the intent to defraud his creditors. And it is right on principle, if not settled by authority, that creditors should be permitted to attach the property of their debtors before conclusively establishing their debts by judgment, and thus prevent the consummation of fraudulent transactions which would deprive them of any successful remedy. And if by the application of this rule

fraudulent purchasers should occasionally be beaten by persons who subsequently fail to establish their alleged debts in their actions against their debtors, the only result would be that some concoctors of frauds would be punished by the wrong persons. That is all. A like result would follow where the creditor recovers a judgment against his debtor and takes property on execution which the latter had fraudulently disposed of, if such judgment should subsequently be reversed and the creditor finally beaten by his alleged debtor after having beaten the fraudulent purchaser of the property in the action brought by such purchaser for the property.

But this has never been deemed a sufficient reason for preventing creditors from seizing the property of their debtors in the hands of fraudulent purchasers, until after the existence of their debts has been conclusively and finally established.

The fact that the judgments against Cartwright & Hassard were recovered after the issues in this action were joined, was no reason for their rejection. Their recovery was not a matter that the defendant was obliged to set up in his answer. They were but evidence, though conclusive, of the existence of the debts for which the attachments were issued; which evidence the defendant did not have at the time he interposed his answer, to support it. If they had not been recovered, all the difference there would have been is, the defendant would have been obliged to prove the existence of the debts against Cartwright & Hassard by other and different evidence, and the plaintiff could have given counter evidence on that question.

I will add that the justice's judgment, mentioned in *Doty* v. *Brown*, (4 Comst. 71,) was removed into the Chenango Common Pleas by certiorari, where it was reversed, but on a writ of error brought to the Supreme Court, the judgment of the Common Pleas was reversed and that of the justice

affirmed. The opinion was delivered by Justice NELSON; but it has never been published.

My conclusion is that the attachments in this case authorized the defendant, as sheriff, to seize any property the defendants named in them, had disposed of in any manner, with intent to defraud their creditors. I hold that the persons who procured the attachments are not to be deemed mere creditors at large of Cartwright & Hassard, after their attachments were served; but creditors having a specific lien upon the goods attached; and that the sheriff, as their bailee, had a like lien, and had the right to show that the plaintiff's title was fraudulent as against the attaching creditors.

It follows that the evidence offered by way of defense to the action was erroneously rejected; and that the judgment of the Supreme Court should be reversed, and a new trial granted, costs to abide the event.

EMOTT, J. expressed no opinion. All the other judges concurring,

         Judgment reversed and new trial ordered.