## HAWKS v. SWETT.

*Evidence — former adjudication — as to validity of patent. Defense — invalidity of patent good to action for royalty. Estoppel — what does not constitute.*

In an action to recover royalties for the use of certain letters patent, *held,* that a decree of the United States court, wherein such letters patent were declared void, was admissible as evidence of want of consideration and of worthlessness of the patent. *Held,* also, that plaintiff could not object to the introduction of the decree on the ground that defendants were estopped for any reason from setting up the invalidity of the patent. Such ground should have been set up in the action in which the decree was rendered.

H. obtained letters patent for an invention which she assigned to S. with a warranty of validity, title, etc., he agreeing to pay her a royalty on the manufactured articles. Afterward G. applied for letters patent on the same invention; an interference was declared and G. was held to be entitled to the patent. Then S. acquired, by assignment, the right of G., and brought an action in the United States court against H., wherein the letters issued to H. were declared void. In an action by H. against S. to recover the amount of royalty agreed to be paid, *held,* (1) that the decision in the United States court was conclusive between the parties as to the invalidity of the patent of H., and (2) that such invalidity was a good defense to the action. *Held,* further, that an assignment by S. to one B. of the patent of H. would not preclude S. from setting up such defense.

APPEAL by plaintiff from a judgment of nonsuit at the circuit.

The action was brought by Elizabeth Hawks against George W. Swett and others, to recover of defendants certain royalties or license fees for the use of certain letters patent, claimed to be due plaintiff by virtue of a written agreement to pay the same. The defense was that the covenant to pay royalties was void for want

of consideration. In April, 1867, plaintiff obtained letters patent for an "auxiliary air chamber," for stoves. This, as well as a reissued patent for the same improvement granted in 1869, was assigned to defendants and one Marston upon an agreement upon the part of the assignees to pay a specified sum upon each stove, etc., containing the improvement. Subsequently, one Goodfellow claimed the same invention; the question of priority was litigated before the patent office, and it was there decided that Goodfellow was the true inventor of the device claimed by plaintiff, and a patent was issued to him. Defendants, having purchased this patent, assigned their interest in the one obtained by plaintiff to one Burtis, and brought an action in the United States Circuit Court against plaintiff, Marston and Burtis, to have said patent issued to plaintiff declared void, and a decree of the Circuit Court to that effect was duly entered. Such other facts as are material appear in the opinion.

*James Lansing*, for appellant.

*Esek Cowen*, for respondent.

Present — LEARNED, P. J., BOARDMAN and POTTER, JJ.

LEARNED, P. J. The first question is, whether the decree of the United States court was admissible under the pleadings.

The answer is not well drawn, but it sets up want of consideration and worthlessness of the patent. There could be no doubt as to the intended defense. This decree between the same parties was good evidence of these facts. *Gates* v. *Preston*, 41 N. Y. 113. If necessary to amend the answer so as to set up the decree by way of supplement, this could have been done at the trial by the permission of the court; for the plaintiff could not be misled. She was a party to the action in which the decree was taken, and appeared therein. See also *Rinchey* v. *Stryker*, 28 N. Y. 45.

Another objection taken to the admission of the decree was that the plaintiff and defendants were jointly interested in the invention, and the defendants are, therefore, estopped from setting up an adverse title. The bill of complaint in which that decree was obtained, to state it briefly, set forth that Elizabeth Hawks, the present plaintiff, having fraudulently obtained letters patent, assigned the same

to Swett and others, the present defendants; that they assigned them to one Burtis; that one Goodfellow was the real inventor of the alleged improvement and had obtained letters patent therefor. Swett and others, these present defendants, therefore, brought that action against Elizabeth Hawks, the said Burtis and one Marston, to have the letters patent issued to this present plaintiff declared void, etc.

Now, if it be so, that the present defendants, having taken an assignment from this present plaintiff, could not legally maintain that action, such defense should have been interposed there. Here it is too late. That decree is a decision that the plaintiffs therein, the present defendants, were not estopped from setting up the adverse title; that is, I mean, they were not estopped in that action.

The most important point, however, is the objection taken on the ground of the immateriality of that decree. That objection substantially raises the real question of the case, which also came up on the exception to the nonsuit.

The facts are briefly these: In 1867 letters patent for an invention were issued to the plaintiff. In the same year she entered into an agreement by which she assigned them to Swett, Perry, Nuttal and Marston. Nuttal has since assigned his interest to Marston, and Swett and Perry have assigned an interest to Quimby. By that agreement the assignees were to pay her fifty cents on every stove, etc., manufactured and sold under said letters patent. She guaranteed the validity and priority of the letters patent; agreed to protect the assignees in the exclusive enjoyment of all rights and privileges conferred, failing to do which all payments were to cease.

In 1869 she surrendered the letters and obtained a re-issue, and in 1870 she assigned to these defendants, Marston, Swett, Quimby and Perry, the said re-issue, subject to the aforesaid agreement for compensation. In 1869 one Goodfellow applied for letters patent on this invention, alleging himself to have been the first inventor, and to have shown the invention to the plaintiff. An interference was declared; testimony was taken on the part of Goodfellow and of the plaintiff; a decision was rendered in favor of Goodfellow by the examiner, which was affirmed by the examiners-in-chief and by the commissioner of patents.

The defendants acquired by assignment Goodfellow's right in the patent, and then commenced the action in the United States Circuit Court against the present plaintiff, one Burtis and Marston. This

plaintiff was duly served with process and appeared; and a decree was taken *pro confesso* January 21, 1873. This adjudges that the letters patent issued to the plaintiff are wholly void, invalid and of no effect, and that she was not the original and first inventor. Now this decree is conclusive between the parties as to the matters in controversy and of the facts necessary to sustain it. *People* v. *Johnson*, 38 N. Y. 63; *Marsh* v. *Pier*, 4 Rawle, 273; *Hopkins* v. *Lee*, 6 Wheat. 109; *Gates* v. *Preston, supra.*

The invalidity of the plaintiff's letters patent, and the fact that she was not the first inventor, are settled as between these parties. The only question is, as to the effect which these established facts have on the present action. In order that we may not be misled by any false analogy, it should be noticed that letters patent on an invention, confer nothing except a right to bring actions, and thereby to prevent persons from doing what they might otherwise lawfully do. Mrs. Hawks, under her letters patent, had a right to sue any one who made stoves in a particular manner, and that was all that she had. If the patent were valid, she could succeed in the action. The first agreement above mentioned was in its real substance an agreement that she would not sue the assignees, if they would pay her fifty cents for each stove, and they agreed to pay her this sum in consideration that she would not sue.

The whole basis of the agreement, therefore, is her right to maintain successfully an action against them. When it is decided that she has no such right, all the consideration of the agreement is gone. For if she has no cause of action by reason of their manufacture of the stoves, an agreement not to bring such an action is of no value.

The counsel for the plaintiff have compared the transaction to a sale of property, real or personal. They insist that in order to defend an action for purchase-money, on the ground of a breach of warranty of title, there must be an eviction; but the difference in the case is that there is no *thing* which passed to these defendants by this agreement. There is no *thing* of which they have had possession, or of which they could be evicted. In a loose sense, these patent rights are sometimes called *property,* but it will not answer to apply to them, without discrimination, the rules which apply to *things.*

If the plaintiff had sold land to the defendants with warranty, they might have enjoyed it until evicted. So, if she had sold them

a chattel. But in this present case, she has only agreed not to prevent them from manufacturing certain stoves; and, by the decision of the United States court, it appeared that she could not have prevented them if she had tried. Her assignment to them, if the patent were valid, gave them only a right to sue others. If it were invalid, it gave no right of action against any one.

It is said that the defendants have had the enjoyment of the patent and have manufactured under it. But there was nothing to enjoy, and it cannot be said that they manufactured under a right which did not exist.

Where certain defendants took a license from a patentee on an agreement to pay certain license fees, so called, and gave a note therefor, the invalidity of the patent was held a good defense to the note. *Saxton* v. *Dodge*, 57 Barb. 84. In harmony with that decision are the cases of *Cross* v. *Huntly*, 13 Wend. 385; *Head* v. *Stevens*, 19 id. 411; *McDougall* v. *Fogg*, 2 Bosw. 387.

If the case of *Thomas* v. *Quintard*, 5 Duer, 80, be contrary to these, it must be considered as overruled. But an examination of that case will show that there was no attempt to prove that the patent was invalid. The offer was to show that the article manufactured under the same was of no value.

That offer presented a question very different from that involved in this case. The defendants do not here offer to show that the stoves which they made were of no value, but they show that the plaintiff had no right to prevent the manufacture of these stoves by her pretended invention. Why then should they pay her for not doing what she could not do?

It is insisted further by the plaintiff that, as the defendants assigned their interest in this patent to Burtis, they are precluded from alleging its invalidity. It is not necessary to inquire whether such a rule would apply to the case of a patent utterly invalid. It is enough that in an action where that objection, if valid, might have been urged, that is, the action in the United States court, the plaintiff's patent was adjudged invalid at the suit of these defendants. *Davis* v. *Tallcot*, 12 N. Y. 184.

The judge was right in directing a verdict for the defendants, and the judgment and order denying a new trial should be affirmed.

BOARDMAN, J. The English decisions seem to hold in cases like this, where the contract has been executed and the defendants have

had the benefit contracted for, they may not set up that the patent was void, and that there was no consideration to uphold it, since the contract gave no exclusive right; that in the absence of fraud or eviction, the defendants, having enjoyed the benefits contracted for, are bound to pay in accordance with their contract, though the patent be void or the plaintiff not the inventor. *Taylor* v. *Hare*, 1 N. R. 260; *Hayne* v. *Maltby*, 3 T. R. 438; *Bowman* v. *Taylor*, 2 Adol. & El. 278; 29 E. C. L. R. 90; *Cutler* v. *Bower*, 11 Q. B. 140; 63 E. C. L. R. 972; *Laws* v. *Purser*, 38 Eng. L. & Eq. 48. From the case of *Bartlett* v. *Holbrook*, 1 Gray, 114, it would appear that the same rule obtains in Massachusetts.

The authorities cited by my brother LEARNED in his opinion show the existence of a different rule of law within this State, and sustain the ruling of the circuit dismissing the plaintiff's complaint, on the ground of a want of consideration. I therefore concur in affirming the judgment.

*Judgment affirmed.*