## WILLIAM B. STERRETT AND OTHERS, RESPONDENTS, *v.* THE THIRD NATIONAL BANK OF BUFFALO, APPELLANT.

*Firm — when deemed to be insolvent, although the amount of its assets exceeds its liabilities — the right of a sheriff to levy upon the interest of one partner in firm assets and sell the same is not settled.*

The plaintiffs, who were engaged as partners, in carrying on the business of producers of and dealers in petroleum oil at Titusville, in the State of Pennsylvania, in September, 1882, gave their notes for $7,500 and $2,000, respectively, to the defendant bank, and as collateral security deposited pipe line certificates. On the 8th day of December, 1882, the defendant, which then held twelve of these certificates, each representing 1,000 barrels of oil, caused an attachment to be issued against the property of the plaintiff Sterrett, and a levy to be made thereon, in an action brought by it against Sterrett upon his individual note, and thereafter recovered a judgment therein and caused an execution to be issued thereon under which the pipe line certificates were sold. On December eleventh the plaintiffs paid their notes and demanded the possession of the certificates of the defendant, which refused to deliver them. The fact in controversy upon the trial of this action, brought by the plaintiffs to recover damages for

the conversion of the certificates, was whether or not the firm was, at the time of the attachment, solvent or insolvent, it being conceded that if it was then insolvent Sterrett had no leviable interest in the certificates.

Upon the trial evidence was given tending to prove that the partnership debts on the 8th and 11th days of December, 1882, amounted to $100,085.35, and its assets consisted of 89,000 barrels of petroleum oil and $221.24 in accounts, and that nearly, or quite all, the certificates for the oil were hypothecated as security for the payment of its debts. The lowest price of oil on the eighth and the highest on the eleventh of December would have made the value of the oil about equal to the firm liabilities, but after that, during the month, the prices would have made it less.

*Held*, that as the amount in which the firm assets, if sold on the day of the levy, would have exceeded their liability, was comparatively small and fluctuating from day to day; and as even this sum was not available to the firm, as the certificates were held by various banks as collaterals on account of the commercial paper of the firm, that the firm should not be treated as solvent so as to furnish an interest in Sterrett, subject to and sufficient to support the levy of the attachment.

A person is deemed insolvent who, at the time in question, is unable to pay his debts in the ordinary course of business    (Per BRADLEY, J )

*Shone* v. *Lucas* (3 Dow. & Ry., 218); *Thompson* v. *Thompson* (4 Cush., 127); *Lee* v. *Kilburn* (3 Gray, 594–600); *Herrick* v. *Borst* (4 Hill, 650), cited.

This court then stated that it had proceeded to the above conclusion upon the merits of this case, upon the theory of the parties upon which the action was tried at the circuit and argued at the General Term, that if the firm was shown to have been insolvent on December 8, 1882, the plaintiffs were entitled to recover, otherwise not, without expressing what views might otherwise have been entertained in respect to the remedy sought by the action, and added that it was proper to say "that, for the purposes of an action like this one and in its support, the question is not satisfactorily settled by authority." (Per BRADLEY, J., who cites, examines, distinguishes and criticises the cases in this and other States bearing upon this question.)

APPEAL by the defendant from an order of the Circuit Court of Erie county, denying a motion for a new trial made upon the minutes.

The cause of action alleged was for the conversion of four certificates of the United Pipe Line Company, each representing 1,000 barrels of patroleum oil. The answer puts in issue the material allegations of the complaint and alleges, by way of justification, the levy of an attachment upon the interest of the plaintiff Sterrett, the recovery of a judgment against him and a sale by virtue of an execution issued thereon. It appeared that the plaintiffs were partners engaged in the business of producers of and dealers in petroleum oil at Titusville, in the State of Pennsylvania; that in September, 1882, they gave their notes for $7,500 and $2,000, respectively,

to the defendant, and as collateral security for their payment deposited with it Pipe Line certificates, that on the 8th day of December, 1882, the defendant held as such collateral twelve of those certificates representing 1,000 barrels of petroleum oil each. On that day the defendant caused the levy thereon of an attachment against the property of the plaintiff Sterrett issued in an action in its behalf against him upon his note; on December eleventh the plaintiffs paid their notes held by the defendant and demanded of it the possession of the twelve certificates, which the defendant refused to deliver. And on the fifteenth day of December eight of the certificates were delivered to the plaintiffs pursuant to an arrangement then made, whereby it was agreed that the interest of Sterrett in the twelve should be treated as embraced in the four certificates not delivered, without prejudice to any rights of the plaintiffs in respect to the latter. The defendant afterwards recovered judgment in its action against Sterrett and caused the four certificates to be sold by the sheriff by virtue of execution upon such judgment. This action was brought for the alleged conversion of those certificates and on the trial the plaintiffs recovered judgment for the damages resulting from such conversion.

*Adelbert Moot*, for the appellant.

*C. D. Murray*, for the respondents.

Bradley, J.:

The proposition in controversy at the trial was whether Sterrett had any interest in the certificates in question at the time the attachment was levied, which depended upon the question of fact submitted to the jury whether the plaintiffs' firm was solvent or insolvent. Because the copartnership as such had rights and interests distinct from those of the several members, and they severally had no individual interest except in a surplus that should remain after adjustment and settlement of the partnership affairs. And if the firm was insolvent, the member Sterrett had no interest in the firm property. (*Staats* v. *Bistow*, 73 N. Y., 264; *Menagh* v. *Whitwell*, 52 id., 146; *Morss* v. *Gleason*, 64 id., 204; *Tarbell* v. *West*, 86 id., 280.) And the right of property for the purpose of paying the partnership debts, as against the appropriation of it to

the payment of debts of the individual members, whether voluntary on their part or by means of legal process in behalf of their creditors, may be asserted by the firm; and it is through the equities of the members in support of such right that the partnership creditors may by their action take the preference in respect to its property. (*Saunders* v. *Reilly*, 105 N. Y., 12.) The plaintiffs' firm owned these four certificates at the time the attachment was levied, subject to defendant's lien as collateral to the notes it then held, of which the defendant was advised. The partner Sterrett could not then effectually have transferred title to the *corpus* of this property to the defendant in payment of his debt due to it. (*Dob* v. *Halsey*, 16 Johns., 34.) Nor could the defendant take by the process, levy and sale any right other than such as should be derived from the share in the surplus of the firm assets, to which its debtor member otherwise would be entitled upon an accounting after payment of the partnership debts. In view of this, much evidence was given bearing upon the financial condition of the firm. The plaintiffs gave evidence tending to prove that the partnership debts on the 8th and 11th of December, 1882, amounted to $100,085.35, and its assets consisted of 89,000 barrels of petroleum oil and $221.24 in accounts; and nearly or quite all the certificates for the oil were hypothecated as security for the payment of its debts. There was some conflict of evidence as to the quantity of oil the plaintifis had at that time; and a question in that respect upon the interpretation of the testimony of one of the plaintiffs, who remarked to the effect that the 89,000 barrels did not include the 12,000 barrels represented by the certificates held by the defendant, but the jury were permitted to find, in view of the further evidence that the remark referred to was inadvertently made. The conflict on the question arises out of the statement of the quantity produced by the plaintiffs and the account put in evidence of their purchases and sales, which presented for the jury the question of fact whether the quantity they then had was or not greater than 89,000 barrels. In that respect the evidence was sufficient to support their conclusion.

The financial situation of the plaintiffs depended upon the price of oil. On December eighth the highest price was $1.17¼ and the lowest $1.12. On December eleventh the price was $1.12 and

$1.08$\frac{1}{4}$; and on December fifteenth, at the time the eight certificates were delivered to the plaintiffs, it was 96$\frac{1}{2}$c. and 93c., and the average price daily was still lower during the residue of that month. The lowest price on the eighth and the highest on the eleventh of December would make the value of the oil about equal to the firm liabilities, but after that during the month the prices would make it less. The certificates have the recognized quality of negotiability in the trade, and its custom in the deal requires their delivery as soon as the day following their sale. The certificates were not in the possession or under the control of the plaintiffs; and without payment of the amounts for which they were held as collateral they were not conveniently available for the market. And the fluctuation in price was such that it could not be known how much they would at any future day produce by sale in the market. The plaintiffs' property consisting as it did of oil, or the certificates giving a right to it, might one day have a value exceeding, and the next day below the amount of their liability. The market was available each day for sale of oil at the then market price, and the sales were usually made through brokers. Assuming that on December eighth, the day the attachment was levied, the market price was such that the plaintiffs' oil, if sold, would have produced a sum exceeding the amount of their firm liabilities, the question arises whether under the circumstances the firm will be treated as solvent as of that day, so as to furnish an interest in Sterrett, subject to and in support of the levy of the attachment. The margin in excess of the value that day was comparatively small, and the pipe line certificates being held by various banks and bankers as collaterals on account of the commercial paper of the firm, were not available to it for the purposes of sale at that time.

Solvency imports adequate means of a party to pay his debts, which embraces within its meaning the opportunity by reasonable diligence to convert and apply to such purpose. In other words a person is deemed insolvent who at the time in question is unable to pay his debts in the ordinary course of business. (*Shone* v. *Lucas* 3 Dow. & Ry., 218; *Thompson* v. *Thompson*, 4 Cush., 127; *Lee* v. *Kilburn*, 3 Gray, 594, 600; *Herrick* v. *Borst*, 4 Hill, 650.)

The situation of the plaintiffs' property did not enable them to put it into market on the day the attachment was levied or the two

or three days following when the price would exceed or equal their liabilities. This right of the firm and its members to protect itself by devotion of its property to the payment of the partnership debts and not to be subjected to a deficiency in that respect by its appropriation to the discharge of the individual debts of the partners is substantial, and the rule applicable to the production of such result must be practicable, else the right may be defeated. When the property is of such character that it has constantly a fluctuating market price, the financial condition of the firm owning it is not necessarily established by the fact that the price for an hour or a day would produce an excess of its liabilities so as to furnish an interest in the individual partners and subject the firm property to the process of their respective creditors, especially if it is so situated that the firm cannot make such transitory market available, because the interest of the partners severally is only in the surplus which may remain after the winding up its business and the payment of the partnership debts, and is dependent upon the result, which requires an opportunity to do it. It would, therefore, seem that the situation within the time when that can be done, may be entitled to consideration upon the question of value at the time when the process in such case is levied upon the partner's interest. And it appears that after the 11th of December, 1882, the highest price of oil any day was insufficient to make 89,000 barrels produce a sum equal to the amount of the firm liabilities until the last day of May, 1883. We think upon the evidence the conclusion was permitted that Sterrett had no interest in the firm property at the time the defendant's attachment was levied upon the certificates in question. The plaintiffs' partnership was formed about October 1, 1880 ; no capital was put in by the members. They purchased a tract of fifty-two acres of land for $23,701, borrowed the money to pay for it, proceeded to put down eleven wells, produced oil from it until July 5, 1882, when they sold and conveyed it to the Second National Bank of Titusville for $16,000, in payment of that amount of debt the firm then owed that and another bank in that city. The plaintiff, Hyde, was cashier of the Second National Bank and Sterrett was one of its directors. There is evidence tending to prove that the price for which the sale was made was then the fair value of the property. The price of oil then was about fifty cents per

barrel, and one reason given for making the sale was that Sterrett who had been regarded the financial man of the firm had become financially embarrassed. The bank operated the property and about January, 1884, disposed of it, and in its operation and sale realized a profit of about $9,000, which it gave to the plaintiff Hyde in January, 1884, and he put it to the credit of his firm.

The defendant's counsel requested the court to charge "that if the jury are convinced that this conveyance to the Second National Bank of Titusville was made for the purpose of hindering, delaying and defrauding the creditors of the firm or the creditors of Mr. Sterrett in collecting their debts, they were at liberty to consider that property at what they deem its fair valuation as assets of the firm on the 8th day of December, 1882, for the purpose of ascertaining whether it was solvent or insolvent," and to the refusal of the court to so charge, excepted. The court, in the charge in referring to that subject, did not distinctly affirm or negative that proposition. While the direct evidence tends to prove that the sale was in good faith, there are some circumstances which may have given the opportunity to parties, situated so as to permit them so to do, to raise the question of the *bona fides* of the sale. But we do not see how that question is available to the defendant in this action. When property subject to original levy and sale by execution has been transferred by the debtor in fraud of his creditors, the officer subsequently levying an attachment upon the property, the attaching creditor or the purchaser at the sale finally made on the execution, may, in defense of the attachment lien or the title derived from its execution, defeat such transfer by showing that it was fraudulent as against the creditors of such debtor. (*Rinchey* v. *Stryker*, 28 N. Y., 45; *Frost* v. *Mott*, 34 id., 253.) This rule is not applicable to choses in action upon which attachment is levied, after a transfer of them, when no interest as between the parties to it remains to the debtor. (*Anthony* v. *Wood*, 96 N. Y., 180.) Treating the certificates as in the nature of certificates of deposit and embracing an undertaking of the Pipe Line Company to deliver the oil to the holder of them on demand, they would seem to be choses in action merely. This may not be important because no such transfer of them is in this case. The sale and conveyance referred to were absolute in terms and as between the bank and the plaintiffs, the

latter had no interest in the property or its proceeds. The defend-
ants had no charge upon the land by force of their proceeding to
reach the interest of Sterrett in the firm assets. The question sim
ply was whether they were sufficient in due course of appropriation
to pay the firm creditors and produce a surplus, and for the purpose
of the defense in this action that depended upon the then existing
rights of property in the firm. And if there are interests not
available for the purposes of accounting between the members
themselves, arising out of transfers of property alleged to have been
made in fraud of creditors, the creditors of the respective partners
as well as those of the copartnership may, in a proper action, bring
all the necessary parties to the controversy into court with a view
to the requisite remedy and relief. We are inclined to think that
the question is not within the defense of this action, and, therefore,
the exception not well taken. This view renders it unnecessary to
refer to other considerations founded upon the evidence, or the want
of evidence bearing upon the proposition and in support of the
ruling of the court.

This case is somewhat novel in this State. And we have pro-
ceeded to the conclusion on the merits upon the acquiescent theory
of the parties, upon which the action was tried at the circuit and
has been argued here, that if the firm was shown to have been
insolvent on December 8, 1882, the plaintiffs were entitled to
recover, otherwise not, without expressing what views may other-
wise have been entertained in respect to the remedy sought by the
action. But it is proper to say that, for the purposes of an action
like this one, and in its support, the question is not satisfactorily
settled by authority. There is a conflict of adjudication in the
different States in respect to the right of the officer making the
levy and sale in such case to take the property and to deliver
it into the possession of the purchaser. In *Phillips* v. *Cook*
(24 Wend., 389) it was held that the property may be delivered
to the purchaser who takes the place and relation of a tenant in
common, may have an accounting of the partnership matters
to ascertain the debtor partner's interest in the surplus, if any, of
the partnership assets, and in the meantime, and subject to the
accounting, retain the possession of the property. This has the
support of other cases in this State. ( *Walsh* v. *Adams*, 3 Denio,

125 ; *Smith* v. *Orser*, 42 N. Y., 136 ; *Read* v. *McLanahan*, 15 J. & S., 275.) And to carry this doctrine to its legitimate result, it may be said that such should be the right of the creditor or purchaser rather than to be subjected to an action for the recovery of the property or for its alleged conversion, dependent upon the proof of value of assets as compared with the amount of liabilities, especially unless insolvency of the firm is not questioned. The question of the right on the sale by execution of the interest of a partner in firm property of the officer to take and deliver the property to the purchaser was not in *Menagh* v. *Whitwell* (52 N. Y., 146), although there are in the leading opinion some remarks which might probably be so construed as to import to the contrary ; but no reference is there made to *Phillips* v. *Cook*, and, so far as we have observed, no adjudication to the contrary of it has been had in this State. And in *Atkins* v. *Saxton* (77 N. Y.; 195, 199) the same doctrine is recognized and stated *obiter*. But in *Deal* v. *Bogue* (20 Penn. St., 228) it was held that in such case the officer making the levy had no right to remove the property or to deliver it to the purchaser ; and that the latter takes by his purchase merely the contingent interest of the debtor partner, depending upon the result of an accounting and adjustment of the partnership affairs, which does not take with it any right to the possession of the *corpus* of the firm property in which the interest of the partner is sold. This is put upon the ground that the creditor, and through the execution of the process the purchaser, can take no greater right and interest than the partner had, which did not include the right to the possession of the property, and, therefore, the officer can neither take (except for the purpose of making his inventory) nor give the possession of it to the purchaser. In support of which are cited *Taylor* v. *Fields* (4 Ves., 396)` and other cases, to which may be added *Morrison* v. *Blodgett* (8 N. H., 238) ; *Vandike* v. *Rosskam* (67 Penn. St., 330) ; *Sirrine* v. *Briggs* (31 Mich., 443) ; *Treadwell* v. *Brown* (43 N. H., 290). The right of the purchaser to have an accounting, and to the extent of his purchase, to take the place and interest of the partner in the result, is the well recognized rule of all the cases. And on such accounting the purchaser, it may be, could bring the necessary parties into court and attack any fraudulent transfers of property made by the firm. (*Webb* v.

*Helion,* 3 Robt., 625; *Wade* v. *Rusher,* 4 Bosw., 537.) But the difference in the two classes of cases before cited relates to the right of the officer to take and` deliver the possession of the property to the purchaser, and of the latter to retain it for the purposes of the accounting which he may proceed to have made.

The doctrine which permits the delivery of the property to the purchaser enables the creditor of a single partner to place the partners not sued in a worse condition than the partner could place them, which is one of the reasons against it given by the courts in denying the right to delivery of such possession. By the application of that doctrine there would seem to be nothing in the way of the maintenance of an action to recover the firm property, or as for its conversion, when so taken from its possession on account of the individual debt of a partner, without reference to the question of solvency or insolvency of the firm. But, as we have seen, such is not the rule hitherto adopted in this State. Farther than this it is not necessary to express any opinion for the purposes of this case other than that embraced in the views already given.

The several exceptions taken to the reception of evidence we have examined, and think no error was committed in the rulings to the prejudice of the defendant; and that none of the other exceptions were well taken.

The order should be affirmed.

SMITH, P. J., BARKER and HAIGHT, JJ., concurred.

Order affirmed.